INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. G. J. SANDLIN.

Decided October 20, 1909.

**1.—Trial—Improper Argument—Withdrawal.**

Improper remarks by counsel for plaintiff in his closing argument in a suit against a railroad company is not cause for reversal when said counsel at once, upon objection being made, withdrew the remarks, stating to the jury that they were improper and asking the jury not to consider them and requesting the court to instruct the jury to disregard them, which the court did; and this, though the verdict against the defendant was a large one.

**2.—Same—Justification.**

Where, in a suit against a railroad, improper argument is made by counsel for plaintiff, the defendant can not complain when such argument is in response to improper argument by counsel for defendant.

**3.—Evidence—Sickness and Injury**

In a suit for damages for personal injuries to his wife, the husband while testifying in his own behalf was asked the following question: "What is the condition of your wife's lower limbs now?" To which he replied: "She suffers a great deal now. She is crippled and can not walk. She has been in bed or in the rolling chair and suffering all the time since that accident. Her lower limbs are in a paralyzed condition now." Held, the question did not call for the opinion of the witness, and the answer was a statement of facts and not an expression of an opinion or a conclusion, and hence the testimony was competent. A witness although not an expert may give his opinion on questions of apparent conditions of the body or mind.

**4.—Personal Injuries—Efforts for Restoration—Evidence.**

In a suit by a husband against a railroad company for damages for personal injuries to his wife, the plaintiff proved by medical experts that if the wife was not in a situation to have a change of scenery and the like to divert her mind, her chances for recovery would be less than under more favorable circumstances. Held, the testimony was not subject to the objection that plaintiff could not recover damages which could be reasonably avoided by proper care and attention.

**5.—Same—Open Switch—Evidence—Charge.**

Evidence considered and held to justify the trial court in submitting to the jury the issue whether or not a railroad switch had been left open by an employee of the railroad company thereby causing the derailment of a passenger train and the injury to plaintiff's wife.

Appeal from the District Court of Walker County. Tried below before Hon. S. W. Dean.

*King & Morris,* for appellant.—Remarks of counsel made in his closing argument which are inflammatory and appeal to the passion and prejudice of the jury, and which are not supported by the evidence in the case, are improper and prejudicial, and should cause a reversal of the case where it is apparent that the verdict of the jury was influenced by said remarks, even though said remarks are withdrawn from the consideration of the jury by the counsel and the court. Chicago, R. I. & T. Ry. Co. v. Musick, 76 S. W., 219; Houston, E. & W. T. Ry. Co. v. McCarty, 89 S. W., 805; Western U. Tel. Co. v. Burgess, 60 S. W., 1025; Missouri, K. & T. Ry. Co. v. Huggins, 61 S. W., 976; Railway Company v. Johnson, 25 S. W., 1035; Wichita Valley Mills v. Hobbs, 5 Texas Civ. App., 34; Dillingham v. Scales, 78 Texas, 205.

It was error to permit appellee to testify that his wife was paralyzed without first qualifying as a medical expert. Gulf, G. & S. F. Ry. Co. v. Hepner, 83 Texas, 136; St. Louis S. W. Ry. Co. v. Schuler, 102 S. W., 783.

Appellee could not recover damages such as could be reasonably avoided by proper care and attention, and it was error for the court to permit evidence tending to show what would be the damages if appellee should fail to use reasonable efforts for the restoration of the health of his wife, and the admission of such testimony was prejudicial to appellant. Gulf, C. & S. F. Ry. v. McMannewitz, 70 Texas, 76; Gulf, C. & S. F. Ry. v. Coon, 69 Texas, 730; City of Waxahachie v. Connor, 35 S. W., 693; Missouri, K. & T. Ry. Co. v. Hagan, 93 S. W., 1014.

There being no evidence showing or tending to show that an employe of defendant company opened or caused to be opened said West Davidson spur-track switch, and thereafter failed to close same, it was error for the court to submit that issue to the jury. It is neither supported by the evidence nor pleading. Johnson v. Galveston, H. & N. Ry., 66 S. W., 906; Dallas Street Ry. Co. v. Lytle, 106 S. W., 900; Atchison, T. & S. F. Ry. v. Sowers, 99 S. W., 190; Galveston, H. & S. A. Ry. v. Faber, 77 Texas, 153.

*Hill & Elkins* and *Lovejoy & Parker,* for appellee.—The remarks of Mr. Parker were in reply to remarks of Mr. Morris, of counsel for appellant. Not only so, but Mr. Parker withdrew the remarks from the jury, stated they were improper, asked the jury to disregard them, and requested the court to so instruct the jury, which the court did, and any error in the remarks was thereby corrected. And besides, appellant did not request a special charge instructing the jury to disregard the remarks. Brown v. Perez, 89 Texas, 286; International & G. N. Ry. v. Aleman, 115 S. W., 74; Hogan v. Missouri, K. & T. Ry., 88 Texas, 685; Jones v. Wright, 92 S. W., 1011, 1012; Texas & P. Ry. v. Garcia, 62 Texas, 289, 290.

It was competent for appellee to testify that his wife was paralyzed, though not a medical expert. Indeed, all the medical evidence showed

that she was paralyzed, though some of the doctors claimed that under proper surroundings she would probably recover from it. San Antonio Trac. Co. v. Flory, 100 S. W., 202.

It is manifest from the bill that the doctor had indicated that a change of scenery would be beneficial to Mrs. Sandlin, and the question merely suggested what was self-evident, namely, that if she was "not in a situation to have a change of scenery" she could not be benefited thereby. The only way the question could have become material would have been for appellee to have offered to show that his wife was not in a situation to have a change of scenery, or for the appellant to have offered to show that she was; but neither did this. There can be no doubt, however, that in view of the statement of the doctor that a change of scenery would be helpful, that evidence that appellee was in no situation to give his wife such a change would have been admissible, if he had seen proper to offer it. The evidence clearly was harmless, and could not have affected the jury. Besides, the burden was on appellant to prove that appellee could have "avoided by proper care and attention" the damages he sustained by reason of the injury to his wife. Belcher v. Missouri, K. & T. Ry., 92 Texas, 597.

The evidence conclusively showed that the switch was open, and made the question whether it was left open by an employe of defendant entrusted with a duty in that regard one for the jury. Gulf, C. & S. F. Ry. v. Smith, 74 Texas, 277; Gulf, C. & S. F. Ry. v. Wilson, 79 Texas, 374; Texas Trunk Ry. v. Ayres, 83 Texas, 270, 271; Mexican Cent. Ry. v. Lauricella, 87 Texas, 279, 280.

On discretion allowed jury in assessing damages: Fourteen thousand dollars not excessive for injury to woman, causing her to be nervous wreck, and also causing her to suffer from insomnia, pleurisy, neuralgia, etc. Railway v. Vollrath, 89 Texas, 281 et seq.; Gulf, C. & S. F. Ry. Co. v. Hayter, 93 Texas, 240, 241 et seq.; Brooke v. Clark, 57 Texas, 13; Houston & G. N. Ry. v. Randall, 50 Texas, 261, 262; International & G. N. Ry. v. Stewart, 57 Texas, 170, 171; International & G. N. Ry. v. Brett, 61 Texas, 488; Gulf, C. & S. F. Ry. v. Dorsey, 66 Texas, 153, 154; Trinity & Sabine Ry. v. Lane, 79 Texas, 643.

On amounts held not to be excessive: Railway v. Shelton, 67 S. W., 653, loss of both legs, verdict, $35,000; Texas & N. O. Ry. v. Kelly, 8 Texas Ct. Rep., 702, legs paralyzed, verdict, $30,000; Waters-Pierce Oil Co. v. Snell, 20 Texas Ct. Rep., 190, burned all over body and face, verdict, $30,000; Missouri, K. & T. Ry. v. Nesbit, 17 Texas Ct. Rep., 207, portion of both feet off, verdict, $21,950; Postal Tel. Cable Co. v. Coote, 57 S. W., 917, injuries to his back and spinal cord, thereby making him bedridden, verdict, $20,000; Galveston, H. & S. A. Ry. v. Nass, 57 S. W., 912, spinal injuries, affecting eyesight, nervous system and lower limbs, verdict, $20,000; Texarkana & F. S. Ry. v. Toliver, 11 Texas Ct. Rep., 632, injury, loss of leg, verdict, $19,500; Railway v. Hines, 50 S. W., 624, loss of leg, verdict, $18,000.

McMEANS, ASSOCIATE JUSTICE.—Suit by appellee, G. J. Sandlin, against appellant, International & Great Northern Railroad Company,

to recover damages for personal injuries received by appellee's wife, Mrs. Tilda Sandlin, while a passenger on appellant's train. Appellee alleged that the engine and some of the cars of the train, including the car in which his wife was riding, were derailed and were brought to a standstill by a sudden and violent stop, and that she was thrown violently down in the car and thereby received the injuries complained of.

Appellant's pleadings consisted of a general demurrer and general denial.

A trial before a jury resulted in a verdict and judgment for appellee for $16,000. The railroad company has appealed.

By its first assignment of error appellant complains of the following language used by appellee's attorney in the closing argument: "Gentlemen of the jury, who is operating this railroad now? The defendant company is not discharging its duty to the public. It is not keeping up its track for the purpose of preventing wrecks of the character of that in which plaintiff was injured, but is leaving that duty to a receiver." The language was objected to at the time and a bill of exceptions saved. The attorney for appellee at once, upon objection being made, withdrew the remarks, stating to the jury that they were improper, and asked the jury not to consider them, and requested the court to instruct the jury to disregard them, which the court did. It appears from the bill of exceptions that the language above quoted was made in reply to the argument made by one of the appellant's attorneys to the effect that railroads are valuable, to "your county and to your community; you seek to get railroads to your town, procuring for them rights of way, making to them donations, and in return they haul your people, buy your timber for ties, add value to your lands, and are of great use to you, and should not be stricken down; and that defendant in this case should not be dealt a blow in doing so much for a community."

It is conceded that the language complained of was improper. The jury was so told by the attorney who used it, and he also in that connection requested the jury not to consider his remarks, and at the same time the trial judge, by the request of the attorney, so admonished the jury. The attorney and the judge did all that could be done to avoid any injury to the defendant by the improper language used. As said in Brown v. Perez, 89 Texas, 186, "The district judge was in a position to observe the jury during the course of the argument, and could determine whether any injurious effect was produced upon their minds much better than we can by examination of the record, and we presume that if, in the opinion of the trial judge, injury had resulted, . . . he would have granted a new trial. We do not think, from the record as presented to us, that the error is such as to require a reversal of the judgment."

Another reason that may be given for holding that the remarks, although improper, do not require a reversal, is that they were made in response to language used by appellant's attorney which were but little less if not fully as objectionable as that complained of. It certainly was no defense to plaintiff's suit that a railroad benefits a community through which it runs, by hauling its people, buying their

timber for ties, and by adding values to their land; and it is equally certain that if such facts constituted a defense, no such facts were proven. In making such an argument appellant's attorney urged before the jury matters which were improper for their consideration. "If counsel for one party pursues a line of argument not called for by the facts of the case and in itself improper, and thereby invites a reply, the party so through counsel violating a proper course of procedure and the rules intended to secure the proper presentation of causes, ought not to be heard to complain of the reply, and in such cases this court will not reverse a judgment on an assignment of error based on such facts." (Texas & P. Ry. Co. v. Garcia, 62 Texas, 289; Missouri, K. & T. Ry. Co. v. Hogan, 88 Texas, 685; Jones v. Wright, 92 S. W., 1011; International & G. N. Ry. Co. v. Aleman, 115 S. W., 74.)

While testifying in his own behalf the plaintiff was asked the following question: "What is the condition of your wife's lower limbs now?" To which he replied: "She suffers a great deal now. She is crippled and can not walk. She has been in bed or in the rolling chair, and suffering all the time since that accident. Her lower limbs are in a paralyzed condition now, and she hasn't any use of them and has no feeling in them." The question and answer were objected to on the grounds that the witness was not a physician, had not qualified as an expert, and therefore was not competent to speak on the subject, and that the testimony was immaterial, irrelevant and prejudicial to defendant; and the objection being overruled by the court, the ruling is made the basis of appellant's second assignment of error. The proposition following the assignment is: "It was error to permit appellee to testify that his wife was paralyzed without qualifying as a medical expert."

The assignment is without merit and is overruled. The question did not call for the opinion of the witness, and the answer appears to be a statement of facts and not an expression of an opinion or a conclusion. However that may be, it now appears to be well recognized that a non-expert witness may give his opinion on questions of apparent conditions of the body or mind, intoxication, insanity, sickness, health, etc. Such testimony is received in the particular cases or instances mentioned because a mere description, without the witness's opinion, would convey an imperfect idea of the force, meaning and inherent character of the thing described. (San Antonio Trac. Co. v. Flory, 45 Texas Civ. App., 233; Texas & N. O. Ry. v. Clippenger, 47 Texas Civ. App., 510; St. Louis S. F. Ry. v. Smith, 90 S. W., 926.)

By its third assignment appellant complains of the action of the court in admitting, over its objection, the testimony of Doctors Bush, Angier, Fowler and Hendricks to the effect that if plaintiff's wife was not in a situation to have a change of scenery and the like to divert her mind her chances of recovery would be less than it would be under more favorable circumstances, and that if she were not in such a situation as to have a change of scenery and the like to divert her mind, they would not say positively that she would ever get well. The proposition asserted under this assignment is that appellee could

not recover damages which could be reasonably avoided by proper care and attention, and it was error for the court to permit evidence tending to show what would be the damages if appellee should fail to use reasonable efforts for the restoration of his wife's health; and that the admission of such testimony was prejudicial to appellant.

It is manifest that the physicians had indicated that a change of scenery, or a diversion of her mind otherwise, would be beneficial to Mrs. Sandlin, and the question merely suggested what was self-evident, namely, that if she was not in a situation to have such a change she could not receive a benefit in that way. The only way the question could have become material would have been for appellee to have offered to show that his wife was not in a situation to have a change of scenery, or for appellant to have offered to show that she was; but neither did this. The evidence clearly was harmless and could not have affected the jury. If appellant desired to show that appellee could have, by proper care and attention, avoided the damages he sustained by reason of his wife's injury, it was incumbent on it to make such proof. (Belcher v. Missouri, K. & T. Ry., 92 Texas, 597.) The assignment is overruled.

Appellant's fourth assignment assails the third paragraph of the court's general charge to the jury, which is as follows:

"Now, therefore, if you believe from a preponderance of the evidence that an employe of the defendant company, entrusted with the duty in that regard and in furtherance of the company's business, opened or caused to be opened a switch connecting the spur track and the main track at West Davidson Mill, and thereafter failed to close the same, and thus failing to close the same, if he did, he was guilty of negligence, and that such negligence, if any, was the proximate cause of the derailment of the train and injury to plaintiff's wife therein, if she was so injured, you will find a verdict for plaintiff."

By its second proposition under this assignment appellant contends that, there being no evidence showing or tending to show that an employe of the company opened or caused to be opened the switch in question and thereafter failed to close the same, it was error for the court to submit that issue to the jury. It is urged by the first proposition that it was reversible error for the court to submit an issue to the jury unless it is raised by both the pleadings and evidence. This brings us to a consideration of the evidence having a bearing on this issue.

The wreck occurred some time after one o'clock in the morning, and was manifestly caused by the switch at West Davidson Mill being so displaced as to be out of alignment for the main line and not far enough to connect with the spur-track, thereby causing what is known as a "cocked" or "split" switch. Appellee having proved the derailment and consequent injury to his wife, it devolved upon appellant to negative every act or omission amounting to the want of care incumbent upon a carrier of passengers that could have been an efficient cause of the derailment, and that it attempted to do by offering testimony to prove that for the seventeen hours next preceding the wreck the switch had not been opened or left opened by any of its

employes entrusted with that duty, and in furtherance of the company's business. By its train dispatcher, Caldwell, was shown the times that various trains passed West Davidson spur between nine o'clock on the morning of December 27th and the time of derailment, as follows: A passenger train at 1 a. m., northbound; a freight train at 11:30 a. m., southbound; a passenger train at 1:50 p. m., southbound; a freight train at 5:40 p. m., northbound; an extra freight train at 6 p. m., northbound; passenger train at 7:40 p. m., northbound. The next train was the passenger train which derailed, which was southbound. Employes on each of these trains, except the one derailed, testified that the switch was not thrown or used by any of the operatives of the respective trains and at the time of the passing of their trains the switch was properly set and showed clear. All the crew of the northbound freight train which passed the switch at 5:40 p. m. testified that they had orders to pick up a car off the spurtrack, but that they did not do so because the car was not properly loaded, and that while the train slowed down it did not come to a stop. Holland, the swing brakeman on this train, testified that he got off the train at a point about 100 feet south of the gate across the spur-track, where he expected to "cut" the train; that at the time he got off the train had not stopped, and that it did not stop, but was running slowly; that the engineer whistled "off-brakes," and that he at once got back on the train; that only one other member of the crew got off on the ground, and he was the rear brakeman, Doyle, who got off the caboose to flag the train behind them. Dr. Rayburn and Miss Rich, who were at the switch when the train passed, testified that it passed without stopping and without any one getting off that they saw. It was shown by the section men working that day near the spur that when they quit work at 5:30 p. m. they got on their handcar and went south to Lovelady, passing the switch at about 5:40, and passed it again, returning, at about 6:30. These witnesses testified that they did not notice anything wrong with the switch at either time. The testimony justifies the conclusion that the cocked switch would not have derailed a northbound train, but would have derailed a train bound south. A handcar, being lighter, would be more easily derailed by a split switch.

W. F. Morris, a passenger on the derailed train, testified that he examined the switch immediately after the accident and found it in a half-thrown position, and he judged it was in that position when the train struck it; that he noticed the lock was not in the switch, but that he did not look for it; that later he saw one of the men who was looking for the cause of the accident pick the lock up from under the long tie on which the switch-stand rested; that it was locked when picked up: that the switch-stand showed no signs of having had any force applied to it; that the lock was found in the neighborhood of the sill and that it seemed to be in good condition, and saw no indication of its having been tampered with; that he noticed the switch staple into which the lock fastened and its condition appeared to be normal, just about like all of them he had ever seen; that the switch lever was about half way between the two slots on the switch-plate and was not in a proper position to turn the train on either side.

We have not set out in detail the testimony bearing upon the issue, but enough, we think, to demonstrate that it was for the jury to say whether the *prima facie* case made by plaintiff, by showing the derailment and consequent injury to his wife, was rebutted by the testimony adduced by defendant to show that the switch was not left open by one of its employes. That the testimony referred to was sufficient to justify the charge complained of, we think there is no doubt. With other evidence introduced, the jury had before it testimony that there was to be moved a loaded car which was upon the spur-track, which was connected by the switch with the main track; that a freight-train crew had orders to pick this car up; that when the train reached the spur the swing brakeman, in the performance of his duties in connection with the picking up of said car, got off the train near the switch, and the rear brakeman also got off for the purpose of flagging a train that was following. It is true that the employes on this train testified they did not stop, and that none of them threw the switch, but whether they did or not was a question for the jury. (Houston, E. & W. T. Ry. v. Runnels, 92 Texas, 306.)

Or the jury may have believed that the section crew left the switch open. It was shown that they quit work at 5:30 p. m., passed the spur on a handcar going south at about 5:40, and returned about 6:30. The importance of this testimony becomes reasonably apparent when it is considered that three trains passed the switch near enough to the time the section men said they passed it for it to have been necessary for them to have taken the spur-track, or to have removed the hand-car from the main line, in order to have gotten out of the way. One train passed at 5:40 going north; another going in the same direction passed at 6, and still another, going in the same direction, passed at 7:40. The time the section men said they passed was 5:40. This was the very time that the evidence showed a train went by, the hand-car going south and the train north. Only twenty minutes later another train passed. It is true that they testified that they did not open the switch or leave it open, but if they did they would be actuated by the most powerful considerations to deny it, and this was a matter which the jury might properly consider. And the jury had before them the further fact that no violence appeared to have been done to the switch or any of the appliances, and the lock had no appearance of having been tampered with. It is pure speculation to suppose that a malicious person opened the switch. We think the testimony was clearly sufficient to justify the submission of the issue in the charge complained of. (Galveston, H. & S. A. Ry. v. Thompson, 116 S. W., 109; Pecos & N. T. Ry. v. Coffman, 121 S. W., 221; Houston & T. C. Ry. v. Shapard, 118 S. W., 599; Dallas Con. Elec. St. Ry. v. Lytle, 106 S. W., 102.)

There is no merit in the third proposition under this assignment, that the charge complained of is upon the weight of the evidence in that it assumes that the switch connecting the spur-track and the main track was open. The testimony was so conclusive upon that point the court could well assume it as a fact. The assignment is overruled.

The remaining assignment of error complains that the verdict is ex-

cessive. There was testimony that appellee's wife is a nervous wreck, hopelessly paralyzed in her lower limbs, and an intense sufferer of both mental and physical pain, as a direct result of the injuries inflicted upon her in the wreck. There was other testimony indicating that under proper conditions and environment, and with proper care, she might recover in from three to five months from the time of trial. The verdict is large, but we can not say from the evidence that it is so excessive as to indicate that the jury was actuated by passion, prejudice, sympathy or other improper motive in fixing their award.

We find no reversible error in the record, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.