## STUDEBAKER BROS. CO. v. KITTS.

(Court of Civil Appeals of Texas. San Antonio. Nov. 27, 1912. Rehearing Denied Jan. 8, 1913.)

1. MASTER AND SERVANT (§ 302*)—INJURY TO THIRD PERSONS — LIABILITY OF MASTER — SCOPE OF EMPLOYMENT.

A chauffeur, authorized to operate an automobile of his employer to haul goods for the employer and when not so used to haul goods for employés, acts, while hauling goods for the employer's foreman, under the express orders of the foreman, within the scope of his employment, and the employer is liable for his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221, 1225, 1229; Dec. Dig. § 302.*]

2. MASTER AND SERVANT (§ 330*)—NEGLIGENT ACTS OF SERVANT—LIABILITY OF MASTER—EVIDENCE.

Where a plaintiff, suing for injuries in a collision with an automobile, proved defendant's ownership of the automobile and that a servant negligently operated it at the time of the accident, he established a prima facie case against defendant, who, to escape liability, must prove that the servant was not acting within the scope of his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1270–1272; Dec. Dig. § 330.*]

3. DAMAGES (§ 210*)—PERSONAL INJURIES—ASSESSMENT OF DAMAGES—INSTRUCTIONS.

An instruction permitting the consideration of mental and physical suffering in ascer-

·taining the pecuniary compensation to plaintiff for injuries complained of is not objectionable as authorizing double damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 537, 538; Dec. Dig. § 210.*]

4. TRIAL (§ 133*) — IMPROPER ARGUMENT OF COUNSEL—OBJECTIONS.

The statement of plaintiff's counsel, in his closing argument in an action based on the negligence of a servant of defendant, that the defense that the servant at the time of the accident was not on his master's business was an ordinary defense, was not ground for reversal as inflaming the jury, especially where the court directed the jury to disregard the statement.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

5. DAMAGES (§ 130*)—PERSONAL INJURIES— EXCESSIVE DAMAGES.

Where an infant struck by an automobile was bruised about the head and face and arms and groin and along his spine, and his nose was broken so that it was plainly perceptible at the trial, and three months elapsed before he could be around after the accident to any extent, and he complained of pain in his back and hip, and he was very nervous up to the time of the trial, a verdict for $2,000 will not be disturbed as excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370, 371; Dec. Dig. § 130.*]

6. APPEAL AND ERROR (§ 1004*)—EXCESSIVE DAMAGES—POWER OF APPELLATE COURT.

The court on appeal will not set aside a verdict for personal injuries as excessive unless it is apparent from the amount that the jury were influenced by passion and prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by James Kitts, a minor, through his father, W. C. Kitts, as next friend, against the Studebaker Brothers Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Smith, Robertson & Robertson and Spence, Knight, Baker & Harris, all of Dallas, for appellant. Geo. O. Wallace and Carden, Starling, Carden & Hemphill, all of Dallas, for appellee.

FLY, C. J. Appellee, a minor, through his father, W. C. Kitts, as next friend, instituted suit against appellant, a private corporation, to recover damages resulting from personal injuries received by appellee through the negligence of appellant in permitting a certain automobile, owned and operated by it, to collide with a vehicle in which appellee was seated. The grounds of negligence were that the automobile was being operated at a greater rate of speed than was permitted by the ordinances of the city of Dallas, and that the brakes were defective on the automobile so that it could not be stopped and thus prevent the accident. Appellant filed a general demurrer and general denial, and specially pleaded that at the time of the accident the automobile "was not being operated by any one upon the business of the defendant, nor in connection with the business of the defendant, nor under the direction or control of defendant." The cause was tried by jury, resulting in a verdict and judgment for appellee in the sum of $2,000.

An automobile owned by appellant, used as a truck, while being operated by an employé of appellant in a negligent and reckless manner, on the streets of the city of Dallas, collided with a delivery wagon in which appellee was seated and injured him. The wagon was standing still by the curbstone when struck by the automobile. The brakes were out of order on the automobile. The automobile, at the time of the collision, was running at a rate of speed in excess of that prescribed by the city ordinance. The driver of the car was acting under orders from the foreman of appellant at the time the accident occurred. The driver swore: "This car was used only to haul stuff that the Studebakers sold and manufactured, and to haul things for the men that were working for the company." There was testimony which tended to show that there was no property on the automobile at the time of the accident, although the employés of appellant swore that a porch swing belonging to the foreman was on the truck and being carried to his home under his orders. There was testimony to sustain the amount of damages found by the jury.

[1] The judgment in this case is based on the negligent conduct of the driver of an automobile belonging to appellant, and the defense rests on the proposition that, although the driver was in charge of an automobile, the property of appellant, he was at the time not engaged in the service of the master, but was attending to the business of the foreman. The proposition is based on the assumption that the uncontradicted testimony showed the facts necessary to sustain the proposition. There are some facts and circumstances, however, which tend to support a different conclusion. There was testimony to the effect that the swing was not seen by witnesses who saw the automobile at or about the time of the collision. The defense now made was not set up in the original answer, but was first disclosed about 16 months after the suit was instituted.

The evidence disclosed that the car was used to haul goods for the master and his employés. There is no pretense that the foreman did not have the right to use the car for transporting the swing; in fact, it was shown by appellant that the foreman had the right to use the cars belonging to the corporation at any time when it did not interfere with his employer's business. The use of the car by the employés for their own purposes was shown to have been contemplated and ratified by the employer.

---

The use of the car was one, therefore, authorized by the appellant, and the driver was acting within the scope of his employment when the collision occurred. It is not a case of lending the car to an employé or other person to perform some act for himself, but is one in which an employé is using the car of the employer under a custom and agreement that prevailed between the employer and employé. It was the master's will that the driver should haul the goods of the foreman, and to all intents and purposes he was engaged in the master's business just as much as though he had been hauling the master's swing. The driver had not stepped aside from his master's business to do an act not connected with such business, but the act grew out of and was a part of such business.

The rule is thus clearly stated by Shearman & Redfield on Negligence (5th Ed.) § 147: "If the act is done while the servant is at liberty from service and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master. On the other hand, where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in, when a third person was injured by his negligence; but the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury."

Under the facts of this case the driver of the car could, at slight intervals during the day, haul for the master, then for the employés; the master being liable at one moment, and a few minutes thereafter not being liable. It was such a mingling of the business of the master and servant that the master will not be allowed to escape the results of the negligence of the servant by fine-spun theories as to whom he was serving at the time of the negligent act. The act of carrying the swing to the house of the foreman was authorized by the master, and liability should follow such authorization. The driver of the car was employed to deliver goods for his master and for the employés, and he was acting as directly within the scope of his employment in serving the one as the other.

The foreman testified: "The auto truck at that time was under my control as foreman for Studebaker. I got it with the understanding that I was responsible for anything that happened to the car while it was in my possession, and if it got broke, or anything like that, they charged me up with it. * * * The company also furnished this truck here for the shop, and I used the truck for whatever might come up. I didn't use it for any work outside of the company's business and the hauling for the boys there in the shop and myself." The accident occurred during the labor hours of the driver of the automobile, and the following ruling, first by the Supreme Court of Connecticut and then by the Supreme Court of Wisconsin, is pertinent: "For all acts done by a servant in obedience to the express orders or direction of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instruction given, and the circumstances under which the act is done, the master is responsible." Ritchie v. Waller, 63 Conn. 160, 28 Atl. 30, 27 L. R. A. 161, 38 Am. St. Rep. 361; Steffen v. McNaughton, 142 Wis. 49, 124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19 Ann. Cas. 1227. Undoubtedly the act in which the chauffeur was engaged when the car collided with the delivery wagon was directly connected with the service of the master, being not only authorized to do what he was doing, but such service being one contemplated by the terms of his employment, which also entered into the contract between the master and the foreman.

The facts, as to whether the driver of the automobile was acting within the scope of his employment when the disaster occurred, were fully and clearly presented to the jury, not only by the charge of the court, but by special charges requested by appellant, and the jury found in the affirmative on the matter. There was testimony, plain and uncontroverted, to sustain that finding, as hereinbefore indicated.

This is not a case where the chauffeur was using the machine for his own business or his own pleasure, being entirely outside of the scope of his employment; but it was a service contemplated in his contract of employment. He was acting under orders from his foreman and performing a service which was a part of the compensation of appellant to the foreman. The chauffeur was performing the service contracted for by his master. None of the authorities cited by appellant meets the issues as made and presented by the facts of this case. This was not a case of the servant turning aside from his employment, nor was it a case of lending a vehicle to a servant, but is a clear case of a servant engaged in the work of the master, whether he was hauling the property of the foreman or of appellant. In the case of Clark v. Buckmobile Co., 107 App. Div. 120, 94 N. Y. Supp. 771, relied on by appellant, the general manager, without authority from the company, was using the car for his own benefit and pleasure. Those are not similar

to the facts of this case, where the foreman ordered out the car under a privilege granted in his contract of employment.

The aim and design of requiring registration, the obtaining of a license, and display of numbers, are the safe operation of automobiles on the streets and highways and to fix the identity of an offender against traffic laws and the public safety. In the majority of instances of negligence the identity of the owner can only be obtained through the numbers displayed on the car and a reference to the register, and if a corporation can contract with its employés that they can use its vehicles when they so desire, and escape the penalty of violations of law by proving that at the time the violation took place the driver of the car was driving for another employé, who had been authorized to use the car, then the chance of recovery in such cases would be small indeed. To uphold such a proposition would make it possible for the corporation to escape all liability for its unlawful acts in operating the cars, would be a menace to personal safety, and would be contrary to public policy. If an employer wishes to authorize the unrestricted use of his automobiles, except in so far as it may interfere with its own business, it has so far commingled its business with that of the employés that it will be viewed as a part of its business, and it will be held liable for damages growing out of such use. It must be kept in mind that the service for the foreman was not to be performed after business hours, but the matter was left in the discretion of the foreman and could be performed at any hour he might choose.

[2] It is the contention of appellant that, in order to recover, the burden rested on appellee not only to show that the automobile was the property of appellant and being operated by his servant, but that he was at the time acting within the scope of his employment. No such onerous burden rested on appellee. When he proved the ownership of the car and that it was being negligently operated by a servant of appellant at the time of the accident, a prima facie case was established, and the burden was upon appellant to rebut it by proof that the servant was not acting within the scope of his employment. It would be an intolerable burden to require an injured person not only to prove his case, but to go further and meet any possible defense the owner of the vehicle might make, before he could recover. "Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of." Long v. Nute,

123 Mo. App. 204, 100 S. W. 511. It follows that the court did not err in refusing to place the burden mentioned upon appellee, as requested in the fifth special instruction, the refusal of which is made the subject of the fifth assignment of error. Appellant asked a very similar charge, giving the converse of the proposition involved in the charge of the court, and it was given.

The charge which is assailed in the sixth assignment is the law of the case as hereinbefore indicated and was not upon the weight of the evidence, and was supported by the evidence. The sixth assignment is therefore overruled.

[3] The charge of the court did not authorize the assessment of double damages. The court merely permitted the consideration of mental and physical suffering in ascertaining the pecuniary compensation for the injuries. Like charges have often been approved. Railway v. Waldo, 32 S. W. 783; Knittel v. Schmidt, 16 Tex. Civ. App. 7, 40 S. W. 507; Railway v. Lynch, 22 Tex. Civ. App. 336, 55 S. W. 389; Railway v. Tisdale, 39 Tex. Civ. App. 372, 87 S. W. 1063; Lumber Co. v. Bivens, 47 Tex. Civ. App. 396, 105 S. W. 835; Railway v. Atwood, 138 S. W. 1101. As said quite pertinently by Judge Williams in cited case of Knittel v. Schmidt: "It is hardly to be supposed that a jury of the commonest intelligence would conceive it to be right and proper to allow compensation twice for the same loss. On such questions as this, it is fair to allow something for the intelligence of the jurors, and to assume that common sense would save them from the commission of such an error, unless the court, by its charge, should misdirect them." There is no basis for the complaint, and the seventh assignment is overruled.

[4] The attorney for appellee, in his closing address to the jury, stated, "The defense that the driver of the automobile, at the time of the accident, was not on his master's business, but was beyond the scope of his employment, is a common and ordinary defense in cases of this character, as you can see from the cases that have been read and discussed in your presence," and that statement is claimed to be "highly inflammatory" and not authorized by the facts in the case. We fail to see that the language was calculated to inflame any honest jury of even ordinary intelligence; but, if it was culpable and improper, it was withdrawn by the attorney, "and the court specifically instructed the jury not to consider said remarks, but to disregard the same." We do not find in the record any evidence of the remark having injured appellant. Brown v. Perez, 89 Tex. 282, 34 S. W. 725; Railway v. Aleman, 52 Tex. Civ. App. 565, 115 S. W. 73; Railway v. Sandlin, 57 Tex. Civ. App. 151, 122 S. W. 60.

[5, 6] The evidence tended to show that the boy's injuries would justify the amount of the verdict. If the mother is to be credited,

the boy was terribly bruised about the head and face, on his arms, and in his groin, and along his spine. She stated that it was about three months before he could get up and be around the house to any great extent, he complained of pain in his back and in his teeth, and he was complaining of his head and was very nervous up to the time of trial. He sleeps very poorly. His nose is broken so that it was plainly perceptible at the trial. Appellate courts have no authority to interfere with the verdicts of juries on the ground of excess, unless it is apparent from the amount given that passion and prejudice rather than reason prevailed.

The judgment is affirmed.