## INEEDA LAUNDRY v. NEWTON.

### No. 1950.

Court of Civil Appeals of Texas. Beaumont.
Nov. 7, 1930.

Rehearing Denied Dec. 4, 1930.

Barnes & Barnes, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

WALKER, J.

In December, 1927, L. B. McCauley was in the employment of appellant, Ineeda Laundry, as one of its truck drivers. The Ineeda Laundry is situated on Main street between Liberty and Broadway in the city of Beaumont. Mr. McCauley lived at the corner of Willow and Calder. It was his duty to care for his master's truck between working hours, and in discharging this duty he kept the truck at night in a garage at his home. Pearl street is south of Main street, and McCauley's home was a block or so west of the crossing of Pearl and Broadway. On the 14th of December, at the close of the day's work, McCauley left the laundry with his master's truck, as was his custom and duty, for the purpose of driving it to his home to be stored in his garage, as was his custom and duty. But, instead of driving from Main street into Broadway and from Broadway west on Pearl and Calder to his home, which was the most direct route, it was his purpose to drive from Main into Liberty and then south on Liberty to Orleans and east on Orleans to Dorfman's store, where

his wife was working, for the purpose of picking up his wife and taking her home with him. His wife worked at Dorfman's at that time. While on his way after his wife, as he was crossing Pearl street going south on Liberty, he struck appellee with his truck, inflicting upon her the injuries for which she sues in this case. Appellant was convicted by the jury of actionable negligence in the following respects: (a) Of driving in the face of a red light immediately before striking appellee; (b) of driving at an excessive rate of speed "at the time and place inquired about"; (c) at the time of the collision of driving at a rate of speed in excess of 20 miles an hour; (d) the driver of appellant's car "failed to use ordinary care to have same under proper control." By answering other questions, appellee was acquitted of contributory negligence. By answering question 10, the jury found that appellee received injuries in the collision, and by the answer to question 13 assessed her damages at $5,000.

Appellant presents its appeal upon the following propositions:

■ By appellant's first, second, and third propositions, complaint is made that the court erred in overruling its general and special demurrers. There is no recitation in the judgment to the effect that these demurrers were called to the attention of the court or were in any way acted upon by the court. Appellant has attempted to bring these rulings before us by certain bills of exceptions reciting the rulings of the court on its demurrers. Such bills present nothing for review, since, under the holdings of our courts, rulings and exceptions on demurrers cannot be preserved by bills of exception but only by judgments duly entered of record. I.–G. N. Ry. Co. v. Straub (Tex. Civ. App.) 7 S.W.(2d) 112; Southern Casualty Co. v. Welch Motor Co. (Tex. Civ. App.) 291 S. W. 272; Garcia v. Yzaguirre (Tex. Com. App.) 213 S. W. 236.

■ By its fourth and fifth propositions appellant asserts, under the undisputed evidence, that the driver of the car at the time of the accident was not "then and there engaged in the furtherance of his master's business," and on this proposition insists that the court erred in not instructing a verdict in its behalf. Appellant's witness L. B. McCauley testified as follows:

"Miss Newton was hit by my truck all right; I was the one that was driving the truck. That was an Ineeda Laundry truck; the truck belonged to the Ineeda Laundry all right.

"I had a garage right in the rear of my apartment that I kept the truck in. Yes sir, I had a garage there in the rear of my apartment where I kept the truck at night. I kept the truck in that garage every night. At the time of this collision I was taking the truck to get my wife and was then going to take

it home and put it up. At that time I was living at 480 Willow Street. I was incidentally going by to get my wife. I was practically on my way home. I was going to get my wife and then I was going right on home to put the truck up.

"I did not go by to get my wife every day in the truck; I only went by after her when it was rainy weather. When it was raining I took the truck and went by and got her and took her home—that was all right with the laundry. I was not violating any duties by doing that: It was all right with the laundry: We all did it. It was raining that evening.

"When I finish my work at the laundry it was my duty to go and put the truck up: My duties did not cease until I put the truck up—It is a fact that I kept that truck there in the garage at my apartment all the time. That is the place where I was supposed to take the truck when I finish my work. I took the truck home with me every night and put it in that garage. I was not violating any company orders by taking it to that garage at night. That is where I was supposed to take the truck when I finish my work. I had been keeping that truck there at the garage for about two and one-half years. I was living up to the company's orders in taking that truck to that place.

"The Ineeda Laundry is in the middle of the block on Main Street between Liberty and Broadway, that is a fact: That would make it half a block from the laundry up to Liberty Avenue, and it would make it also half a block down to Broadway—it is practically the same distance from the intersection of Main and Liberty Street down to Willow Street as it is from the intersection of Main and Broadway—my house is on the corner of Calder and Willow."

We think the following authorities in principle sustain the theory that the driver at the time of the accident was "engaged in the furtherance of his master's business": Wright v. Maddox (Tex. Civ. App.) 288 S. W. 560; Pierce-Fordice Oil Co. v. Brading (Tex. Civ. App.) 212 S. W. 707; Gulf Refining Co. v. T. & F. S. Ry. Co. (Tex. Civ. App.) 261 S. W. 169; Connor v. Crain (Tex. Civ. App.) 289 S. W. 712; Davis v. Jeffords-Schoenmann Produce & Brokerage Co. (Tex. Civ. App.) 261 S. W. 401; Trachtenberg v. Castillo (Tex. Civ. App.) 257 S. W. 657; Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367. He admitted he left his master's place of business for the purpose of driving the truck home. It was his duty to store it there for safe-keeping. At no time had he abandoned this duty. True, he was going to Dorfman's after his wife, but in doing this he was not violating his master's orders. The master had never designated a route for him to take in driving the truck to his home. The choice of the route

was left entirely to him. If he drove straight home, this was satisfactory to his master; and by turning from the direct route and going by Dorfman's after his wife, that was also satisfactory with his master. The case is entirely different from the line of authorities cited by appellant, where the driver is engaged upon an enterprise in which the master is not concerned, as was the case in Murphy v. Gulf Production Company, 299 S. W. 295, by this court. In this case there was never a moment from the time the driver left the Ineeda Laundry on Main street when he was not engaged in driving the truck home for the purpose of storing it for the night and with no objections from his master because of the route chosen.

■ By the sixth proposition appellant insists there was no allegation in appellee's petition that the driver of the car was engaged in his master's business at the time of the accident. This proposition is overruled. The petition contained the following allegation, which, in the absence of exceptions, was sufficient: "That on or about said date above alleged a truck or motor vehicle then and there being operated by defendant and its authorized agent in the furtherance of the master's business and in the course of the agent's employment. * * *"

While it is true that appellant excepted to this allegation, yet, as stated above, it failed to bring forward these exceptions as required by law.

■ By the seventh proposition, appellant complains that the court erred in submitting to the jury the issue as to whether or not at the time of the accident the driver was using the car with the knowledge and permission of the defendant. This issue was clearly raised. Appellant itself recognized that this issue was in the case, because it requested the submission to the jury of the following question, which was duly given and answered against it: "Was the driver of this car with which we are now concerned acting in the scope of his employment at the time and place when the injuries, if any, were sustained by the plaintiff?"

■ By the eighth proposition appellant complains that the court required the jury to base its findings on "a preponderance of the evidence." Thus, to illustrate: "Question No. 1. Do you believe from a preponderance of the evidence that the driver in charge of the car, which struck and injured plaintiff, crossed Pearl Street immediately before striking the plaintiff in the face of a red light showing as the traffic signal at said crossing?" The objection was that this charge left the jury to grope in darkness as to how a conclusion should be reached. There is no merit in this contention.

■■ By the ninth and tenth propositions appellant complains of the court's charge on proximate cause, which was as follows: "Proximate cause, as used in this charge, is that cause which in natural and continuous sequences, unbroken by any efficient, intervening cause, produces the result complained of, and without which that result would not have occurred, and in the light of the attending circumstances such result ought to have been foreseen by the person of ordinary care and prudence. An efficient intervening cause is one that breaks the convention between the original wrongful act and the injury."

The objections, as brought forward in the propositions, were that the charge as given ignored "the elements of independent cause and continuity in causation," and in failing to define "efficient cause." There is no merit in these propositions. While appellant excepted generally to the definition of the term "efficient intervening cause" as given by the court, the exception in no way pointed out wherein the definition was deficient. For that reason this exception presents nothing for review. Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920. The definition affirmatively submits the issue of "continuity in causation," and clearly "the elements of independent cause" were involved in the definition as given.

■ By the eleventh proposition it is asserted that the following issue was on the weight of the evidence, in that it assumed that the truck driver struck and injured the plaintiff, to wit: "Do you believe from a preponderance of the evidence that the driver in charge of the car which struck and injured the plaintiff crossed Pearl Street, immediately before striking the plaintiff, in the face of a red light showing as the traffic signal at said crossing? Answer 'yes' or 'no.'"

There is no merit in this contention. On the undisputed evidence he did strike and injure the plaintiff. He testified: "The bell started to ringing amber, and the young lady Miss Gladys Newton stepped out in front of my car and I collided with her. When the car collided with Miss Newton she fell kinder off in that direction (indicating)."

All the testimony was to the effect that appellee was injured.

■ By the twelfth proposition appellant complains of the manner in which question 13 was submitted. By question 11 the court inquired of the jury if appellee received injuries in the collision with appellant's truck on December 14, and by question 12 the jury was asked whether or not the truck was being operated by an agent or employee of appellant. Question 13 submitted to the jury "what sum of money paid now, would, in your judgment, compensate the plaintiff for the injuries, if

any, received by her." In connection with these questions, the court instructed the jury that, if they had answered questions 11 and 12 "No," then not to answer question 13. Appellant objected to this instruction on the ground that it advised the jury of the effect of their answers to questions 11 and 12. This objection is overruled. This form and manner of submitting a series of questions has been approved by the courts so many times that its propriety is now beyond question. Standard Accident Insurance Co. v. Williams (Tex. Civ. App.) 4 S.W.(2d) 1023, Id. (Tex. Com. App.) 14 S.W.(2d) 1015.

The thirteenth proposition presents the following issue: To guide the jury in answering question 13, they were instructed "to consider the evidence as to any expenses and medical services and medicine, if any, incurred or expended by the plaintiff, made necessary or proper by the injuries received." Appellant reserved the following exceptions to this charge: "The court erred to the prejudice of the defendant in failing to sustain and overruling defendant's objection and exception No. 12, which objection and exception reads as follows: 'Defendant objects and excepts to Question No. 13, because there is no evidence in the record as to what the medical expense or doctor's bill is, or has been, and further because it is not a proper definition of the measure of damages in such cases, and because there is neither pleadings nor proof to support the definition of measure of damages as given in that charge.' "

On this issue Dr. W. L. McCreight, county health officer of Jasper county, testified: "I know Miss Gladys Newton who is alleged to have been involved in a collision with an Ineeda Laundry truck at Beaumont, Texas, on or about December 14, 1927—I had occasion to examine Miss Newton shortly after December 14, 1927. At that time she was very nervous and was suffering with injuries about the head, hip and back, severe headaches and backaches. Before December 14, 1927, the condition of her health generally was fairly good. Her condition since December 14th as to her general health has not been good—I rendered professional services to Miss Gladys Newton the latter part of December 1927 and the latter part of 1928, and would consider $25.00 a reasonable charge for such service."

That he performed this service at the request of appellee's father and charged it to him did not relieve appellee from liability therefor. Houston & T. C. R. Co. v. Gray, (Tex. Civ. App.) 137 S. W. 729. The services were clearly rendered for her use and benefit, and under the undisputed facts she was liable for this doctor's bill. Appellant failed to except to the charge on the ground that the evidence did not raise the issue as to the expense incurred by appellee for medicine. Therefore that issue is not before us. Insurance Co. v. Williams, supra.

The fourteenth proposition complains of the following issue as being duplicitous: "Do you believe from a preponderance of the evidence that the use of the truck he was driving by the driver thereof in deviating from his course home for the purpose of going after his wife and taking her home with him in the truck was with the knowledge and permission of the defendant?"

Appellant contends that the submission of the issue "with the knowledge and permission of the defendant" made it duplicitous. There is no merit in this contention. First, we say this issue appeared as a matter of law, that is to say, under appellant's own testimony the truck was used with its knowledge and permission; second, the same issues submitted by this question were necessarily involved in the requested issues submitted by appellant itself and answered against it, as shown above.

All the questions submitted to the jury were in this form: "Do you believe from a preponderance of the evidence." By its fifteenth proposition appellant insists that this was error; that, instead of requiring the jury to answer these questions on belief, the charge should have been simply, "Do you find" from a preponderance of the evidence? This exception is overruled. There is nothing objectionable in this form, because, as submitted, the phrase "do you believe" carried to the jury the same idea as the one suggested by appellant, "do you find."

By the sixteenth, seventeenth, eighteenth, nineteenth, and twentieth propositions appellant complains that the jury was not kept together during the period of its deliberation, but was permitted to separate and to talk with third parties, not under the direction of the sheriff. There is no merit in this contention. The facts are simply that appellant's counsel was in conference with the district judge. While they were together, one juror came in to make an inquiry of the judge for the benefit of the jury. The court talked with this juror in the presence of appellant's counsel, and then he returned to the main body of the jury. If this was error, appellant knew of it in time to object long before the jury came in with its verdict, and, not having done so, the law does not permit it to take a chance upon a verdict in its favor and then complain if the verdict should be against it. Wolf v. Wolf (Tex. Civ. App.) 269 S. W. 488. The facts of these propositions are thus stated by the trial court in qualifying appellant's bill:

"Examined, found to be correct, approved, and ordered filed as a part of the record in this cause, with the following qualifications, to-wit: After the jury had been in retirement for awhile no one being in the court room, except the janitor who was sweeping the room, the judge, together with J. A. Barnes, attorney for defendant, were in the judge's room or

office waiting for the jury to return a verdict, one of the members of the jury came through the court room into the judge's office, and presented to the judge in the presence of defendant's attorney, a written question as follows:

" 'Special Issue No. 11 has no place for answer on sheet. It so happens that we are not answering it anyway. Will the omission on answer sheet effect our decision. K. E. Shane, Foreman.'

"Counsel for Deft. was shown the paper, and the court then wrote at bottom of the sheet, 'It makes no difference' and signed same J. D. Campbell. The court then asked counsel for defendant if he would make any exception to same, and he said he would not.

"The juror then took the paper and returned to the Jury room, and shortly afterwards the jury returned its verdict, on the same day June 18th, 1929 at 6:50 P. M. and were discharged. Motion for new trial was filed on June 20, 1929. The term of court expired on Saturday Sep. 28, 1929; on which day the said motion was set for hearing, and thereupon, defendant asked leave to file an amended motion for new trial, which was given; and he filed the amended motion, setting up for the first time misconduct of the jury. Defendant's counsel J. A. Barnes, and A. C. Mestayer, agent of the company carrying liability insurance for defendant, testified, and it was not found that the juror had spoken to anyone out side of the jury room, except to the janitor in searching for the judge, and then to the judge in the presence of counsel for defendant, and possibly to said witness A. C. Mestayer, who was possibly present and heard what passed between the juror and the judge in the presence of counsel for defendant.

"J. D. Campbell,
"Judge 60th Judicial District."

■ It affirmatively appears from this qualification of the trial judge that counsel was asked if he would make any exception to this proceeding, and that he replied "he would not." We think these facts constitute a waiver of error, if any was shown.

■ By the twenty-first proposition appellant insists that the verdict of $5,000 in appellee's favor was excessive. This proposition is overruled. Appellee was not able to work for five or six months. She is not able to do as much work as before she was injured. She does not have the strength she had before she was injured. The use of her left arm is impaired. "If I get my arm into a certain position like that (indicating) I cant stand it. If I hold it this way for any length of time it falls like that. * * * It pains me more when I get it in a certain way. * * * This place along in there pains me too. * * * Right in there becomes swollen and aches, especially if I work hard for several months. * * * It feels like it is

drawing and pulling back in there. * * * It aches in there if I get my arm up it feels dead like and there is a kind of drawing feeling in there." Before her injury she weighed from 127 to 132 pounds. "Now I guess I weigh about 111 pounds; I haven't weighed in the last few weeks; I did get down as low as 102 pounds." She complained further of disturbance of her female organs. Before her accident she had no scars on her head or face; now she has a scar on her head. Before her accident she did not suffer with nervousness; but "I have been very nervous since the time of the accident, in fact I have had two breakdowns." Without quoting from the testimony of appellee's doctor, as offered on the witness stand, it is sufficient to say that his testimony with hers sustains the verdict. Stedman Fruit Company v. Smith (Tex. Civ. App.) 28 S. W. (2d) 622, 623.

■ By the twenty-fourth, twenty-fifth, and twenty-sixth propositions appellant complains of the admission of certain testimony. For instance, J. V. Stovall was asked, "Was she conscious or unconscious, if you know?" He answered this question by saying she was unconscious. Mrs. Gallier, appellee's sister, over appellant's objection, testified that appellee was semiconscious after the accident, and "the clothes that she had on was shown to me and they were completely torn to threads." Answering further inquiries, this witness said, "her shoes and heels were torn off of both of them and her hose was completely in threads." This witness was not present when her sister was injured, but testified that her clothing was pointed out to her. There was no error in the reception of this testimony. The testimony was not subject to objection. In International & G. N. R. Co. v. Sandlin, 57 Tex. Civ. App. 151, 122 S. W. 60, it was held: "A nonexpert may give an opinion to appellant's condition of the body, and the husband can testify that the wife's lower limbs are in a paralyzed condition."

Finding no errors in the record, the judgment of the lower court is in all things affirmed.

On Rehearing.

■ Our opinion was filed in this case on October 23d. On the 5th of this month appellant secured from the trial court a nunc pro tunc order overruling the demurrers referred to in the original opinion. On the same day appellant filed in this court its motion for certiorari, praying that the clerk of the trial court be directed to send up a transcript of this order and that it be considered as a part of the record on its motion for rehearing. On authority of Woolley v. Nelson (Tex. Civ. App.) 250 S. W. 481; Houston & T. C. R. Co. v. Parker, 104 Tex. 162, 135 S. W. 369; Missouri, K. & T. R. Co. of Texas v. Hurdle (Tex. Civ. App.) 142 S. W. 992; Trammell v. Rosen (Tex. Civ. App.) 153 S. W. 164, 165;

City Nat. Bank v. Watson (Tex. Civ. App.) 178 S. W. 657, the motion for certiorari is denied. Relief of the character prayed for cannot be granted after submission in this court.

■ We were in error in overruling appellant's thirteenth proposition. In the charge, the term "medical services" was used in the sense of doctor's bills. The cost of "medicine" was submitted as a separate item. These issues were submitted as pleaded by appellee. Appellant's exception was "because there is no evidence in the record as to what the medical expenses or doctor's bill is." By this exception we thought appellant used the terms "medical expenses" and "doctor's bill" as synonymous, and overruled the exception as being insufficient to call the court's attention to the fact that no evidence had been offered in support of the claim for medicine. Appellant strenuously insists that the exception was intended to challenge the charge on both items. As the exception is subject to that construction, we grant the motion in so far as it relates to the cost of medicine, and, as appellee has offered to remit the $50 sued for for the cost of medicine, it is ordered that the judgment of the lower court be reduced by this sum. This order has support in International & G. N. R. Co. v. Sampson (Tex. Civ. App.) 64 S. W. 692, 694, where Judge Gill, speaking for the court, said: "We think it equally clear that this court can, in view of the evidence as it stands, safely proceed upon the theory that the jury allowed no more for medical bills than the amount claimed in the petition. That sum, viz. $200, the appellee has offered to remit, and the remainder of the judgment, viz. $1,050, being supported by the evidence as to other injuries, will, as thus reduced, be affirmed. The course we have adopted finds distinct support in [Missouri, K. & T.] Railway Co. v. Warren [90 Tex. 566, 40 S. W. 6]," cited above.

This very proposition was before this court in H. E. & W. T. Ry. Co. v. Jones, 1 S.W. (2d) 743, 748, a personal injury case in which appellee sued for damages to his person and for hospital and nursing fees and doctor's bills and costs of medicine. These special items of hospital and nursing fees, doctor's bills, and cost of medicine were itemized by appellee in his petition, totaling $1,109. The issue of damages was submitted in one question and a gross amount found by the jury in the sum of $15,000. In affirming the case in part, and in reversing and remanding it in part, we said:

"But there was no evidence that the cost of these items was reasonable. [Referring to the items sued for as hospital and nursing fees, doctor's bills and cost of medicine.] The evidence went no further than to show that appellee paid out these specific amounts. For that reason, the court should have elimi-

nated all these special items from its charge to the jury. The plaintiff could recover items such as doctor bills, medicine bills, hospital fees, etc., only upon a showing that the charges were reasonable. City of Beaumont v. Dougherty (Tex. Civ. App.) 298 S. W. 631. However, this error does not reverse the case, since the amount involved is easily ascertained, both from the pleadings and the evidence. The jury having assessed appellee's damages at $15,000, and he having pleaded his special damages in the sum of $1,019, it follows that the judgment should be affirmed for $13,981, being the difference between $15,000 and $1,019. As to the $1,019, being the items above referred to, the cause is reversed and remanded.

"Affirmed in part, and in part reversed and remanded, with costs taxed against appellee."

It follows that appellant is in error in insisting that this error in the court's charge should reverse the judgment of the lower court. In support of this proposition, it cites American Produce Co. v. Gonzales (Tex. Com. App.) 1 S.W.(2d) 602, which, as we construe it, is not at all in point. However, after the judgment in that case was entered by the Supreme Court, it refused writ of error in the Jones Case, thus affirming the proposition upon which we based our judgment reversing the judgment of the lower court only in part.

The eighth proposition was correctly overruled. Appellant now says that this proposition and the assignment upon which it was based do not constitute exceptions to question No. 1 copied in our opinion, nor to any of the other questions thus submitted. The issues of this case were submitted by twenty-seven questions. The eighth proposition was as follows: "When the court in submitting controlling issues fails to instruct the jury as to the burden of proof on said issues, by requiring the jury to make as bases for its findings 'a preponderance of the evidence,' said charge leaves the jury to grope in the darkness as to how a conclusion can be reached, and said charge is, therefore, fatally defective, and constitutes reversible error."

■ The assignment is no broader than the proposition. Appellant briefed this proposition originally and on rehearing only in so far as it relates to five of these questions. The assignment did not call the trial court's attention to these specific questions. Apparently the concession is made that all the other questions were properly submitted. In order to constitute error, it was necessary that appellant call the trial court's attention by exception to the particular questions deemed by it defective.

Complaint is made of the following fact conclusions:

(a) That McCauley "admitted he left his master's place of business for the purpose of driving the truck home. * * * There was

never a moment from the time the driver left the Ineeda Laundry on Main Street when he was not driving the truck home for the purpose of storing it for the night." The testimony of this witness, copied in our opinion, fully sustains this conclusion, especially where he said: "I was incidentally going by to get my wife. I was practically on my way home."

(b) We correct our conclusion that "Mc-Cauley's home was a block or so west of the crossing of Pearl and Broadway" to read "west of the crossing of Pearl and Calder." The Pearl and Calder crossing is one block west of the Pearl and Broadway crossing.

(c) We found that McCauley's most direct route home was by driving from Main street into Broadway and from Broadway west on Pearl and Calder. Appellant insists that the evidence shows that the most direct route was north on Main and west on Calder. This finding is made as requested by appellant. The difference between the two routes, however, is so insignificant as to be utterly immaterial, amounting to only a few feet.

(d) Appellant is in error in insisting that McCauley was driving west on Liberty when he struck appellee. To be accurate, instead of saying "going south on Liberty," we should have said going southwest on Liberty.

Except as herein indicated, appellant's motion for rehearing is overruled.