## WEST LUMBER CO. v. KEEN.  (No. 521.)

(Court of Civil Appeals of Texas. Beaumont. April 3, 1920. Rehearing Denied April 28, 1920.)

1. **Master and servant ⚫⚓318(1)—A sawyer paid by the piece, but under foreman's control, not an independent contractor.**

A sawyer employed by a lumber company, though paid according to the timber sawed, being under control of the lumber company's foreman, is not an independent contractor, particularly where the employer deducted a portion of his wages with those of other employés for sick benefit fund, etc.

2. **Master and servant ⚫⚓356—Defense of assumed risk abolished.**

The Workmen's 'Compensation Act (Acts 35th Leg. [1917] c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91]) abolished the defense of assumed risk.

3. **Master and servant ⚫⚓278(19)—Evidence held to show negligence in ordering sawyer to saw particular tree.**

In an action by plaintiff injured while sawing a tree in accordance with the express directions of the foreman of the lumber company, evidence *held* to warrant a finding that under the circumstances the foreman was negligent in requiring the sawing of such tree.

4. **Trial ⚫⚓358—Trial court should reconcile conflicts between findings.**

It is the duty of the trial court to determine, if reasonably possible, what the jury meant by special findings, and to reconcile apparent conflicts between the findings.

5. **Master and servant ⚫⚓297(2)—Findings as to negligence of master held inconsistent.**

In a servant's action, where the jury, in answer to special issues, found that he was under control of foreman, and that the foreman was guilty of negligence in directing him to saw a particular tree, etc., the fact that the jury appended an answer "No" to a special charge that no one is guilty of negligence who uses reasonable care, etc., cannot be deemed to amount to a finding that the foreman was not guilty of negligence and render the findings so contradictory as to prevent judgment.

6. **Trial ⚫⚓191(1)—Refusal of a charge making an erroneous assumption of fact is proper.**

Refusal of a charge making an erroneous assumption of fact is proper.

7. **Appeal and error ⚫⚓1062(2) — Where jury found defendant's foreman had authority to direct work, defendant cannot complain of refusal of issue as to authority.**

Where the jury, in response to another special issue, found that defendant's foreman had authority to direct plaintiff as to place of work, defendant cannot complain that the court failed to submit the question whether foreman had such authority.

8. **Damages ⚫⚓154—Defense that plaintiff failed to follow physician's advice must be pleaded.**

In a servant's action, the defense that the servant was negligent in the treatment of his injuries or in failing to observe and obey the instructions of his attending physician must be pleaded to be available.

9. **Damages ⚫⚓62(2)—Injured person need use only ordinary care in treating injury, and is not bound to obey advice of any particular physician.**

A person injured by the negligence of another is only required to use such care and prudence as would be used by an ordinarily careful and prudent person in the treatment of such injuries, and is not bound to follow the specific treatment prescribed by any particular physician.

10. **Trial ⚫⚓256(13)—Defendant desiring more explicit presentation of question must ask additional instructions.**

In a servant's personal injury action, where the court submitted the question whether the servant was guilty of any negligence while under treatment which aggravated his injury, and charged that, in case he was the recovery should be limited, defendant, if desiring a more explicit presentation of the issue, should have requested additional instructions.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Action by W. H. Keen against the West Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Huggins & Kayser, of Houston, for appellant.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellee.

HIGHTOWER, C. J. Appellee, Keen, brought this suit against appellant, West Lumber Company, in the district court of Polk county, to recover damages for personal injuries alleged to have been sustained in consequence of negligence attributable to appellant at a time when appellee was employed by appellant and was in the discharge of the duties of his employment. The injuries alleged consisted of a broken leg just above the ankle and a dislocation or mashing of the ankle, and other minor bruises, which injuries were alleged to be serious and permanent, and that they had caused appellee much pain and suffering and rendered him a cripple for life.

Appellant answered by general denial and by special pleas of contributory negligence and assumed risk.

The case was tried with a jury, and was submitted upon special issues, the answers to which were favorable to appellee, and judgment was rendered in favor of appellee, in accordance with the verdict, for $5,000.

Upon conclusion of the evidence, appellant

⚫⚓For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

requested the trial court to peremptorily instruct a verdict in its favor, which was refused, and the action duly excepted to. This action of the court is made the basis of the first assignment, under which it is claimed that the peremptory instruction should have been given for three reasons: (1) Because the evidence showed conclusively that appellee was not an employé of appellant, in the legal acceptation of that term, and that the relation of master and servant or that of employer and employé did not exist between appellee and appellant at the time of the injury, but that, on the contrary, appellee at the time was an independent contractor; (2) because the evidence showed, without dispute, that appellee's injuries resulted from a risk incident to his employment and assumed by him, if in fact he was an employé of appellant, and that therefore appellant was not liable; and (3) that the undisputed evidence failed to show any negligence on the part of appellant or on the part of any one whose negligence could be attributable to appellant which proximately caused the injury.

[1] We will take up and dispose of these propositions in their order. At the time appellee was injured he was working for appellant out in the woods, some distance from its Onalaska mill in Polk county, appellant at that time being engaged in the sawmill business and appellee was sawing down trees or pine timber in the woods, and sawing such trees or timber into logs to be carried to appellant's mill and there manufactured into lumber. At the time of the injury there were some 30 or 40 men performing the same services for appellant that appellee was performing; that is to say, 30 or 40 men who were designated or called sawyers and who were employed by appellant to cut this timber in the woods to be transported to the mill, as before stated. These sawyers worked in pairs; that is to say, there would be 2 men to the saw in cutting down and sawing up this timber. At the time appellee was injured he had been working for appellant in the capacity stated about three weeks, which was the only experience he had at that time in the work. Each pair of sawyers, under appellant's system of cutting the timber, was assigned to a certain strip or territory, and required to cut all saw timber from these strips that would measure as much in diameter as eight inches at the butt. These sawyers, as a rule, went to work about the same time early each morning, and would put in a day's work, and they were under the direction, supervision, and control of appellant's woods foreman, a Mr. Bill Kibler. It was the duty of the foreman to see that these sawyers cut all the timber from the strips or areas of land assigned to them that was fit for manufacturing into lumber, which, as we have stated, was all timber as

large as eight inches at the butt. If any sawyer failed to report for duty on any morning at the hour for him to go to work, the saw used by him, which was furnished by appellant, would be turned over to some other man. For the services performed by appellee in sawing timber for appellant, as before stated, he was paid 90 cents per thousand feet of timber sawed by him, as were likewise all other sawyers performing the same duties. If any of these sawyers refused to comply with the orders and directions of appellant's foreman in sawing the timber, they were subject to discharge by the foreman, who had authority to employ and discharge these sawyers.

The specific negligence charged by appellee against appellant was that appellant's foreman directed and insisted that appellee and his companion sawyer should fell a certain tree on the strip of territory assigned to them, which tree appellee alleged he and his companion sawyer had passed up—that is to say, had failed and refused to fell—for the reason that it was difficult to fell this tree without its falling across appellant's tramroad, which was forbidden by appellant's rules and its foreman. It seems that the tree leaned in the direction of the tramroad, and that it was difficult to throw it in another direction, and, if thrown in another possible direction, it would fall on some large tops (presumably of trees already felled), and that it would be a difficult matter to handle this tree in any way, and, further, because there was a large and heavy limb hanging in the top of this particular tree, which appellee and his companion thought made it dangerous for them to attempt to fell the tree. Appellant's foreman discovered that this tree had been "passed up" by appellee and his companion, and spoke to appellee and his companion about it, and told them to cut the tree. They did not do so, and again appellant's foreman noticed their failure and again insisted that they cut the tree, and they failed again to do so, and then, on the day of the injury, for the third time appellant's foreman told appellee and his companion to fell this tree, as one of them put it, "By God, to cut it," but not to cut it so that it would fall over the tramroad. Thereupon, and while appellant's foreman was present seeing that appellee and his companion should comply with his orders, they proceeded to fell the tree away from the tramroad, and in falling it lodged or became fastened and wedged between two smaller trees or saplings and eased its way down until it got within two or three feet of the ground, and there tightly wedged or lodged between the saplings. Upon discovering this situation, appellee or his companion told appellant's foreman that, on account of the manner in which the tree had lodged between the saplings and the strain that was

upon it, they feared to undertake to saw it in two, for the reason that the top end of the cut would be liable to swing around and hurt them. Appellant's foreman, according to the undisputed testimony, insisted that they saw off the log, notwithstanding the position of the tree between the saplings, and told them that there was no danger, and that they must cut the log. Believing 'that they had no alternative except to "lose their job," as they stated it, they proceeded to saw the tree in two, and after the saw had cut into the tree a certain distance it "pinched"—that is, the saw became wedged in the cut—and appellee and his companion again hesitated but appellant's foreman insisted that they proceed to saw the log in two, and they then continued, and after the saw became unpinched the log was cut in two, and the top end swung around and struck appellee on the leg just above the ankle and injured him.

It was further shown by the undisputed evidence that a certain per cent. of the wages or compensation of all of appellant's employés, including these sawyers, was deducted each month for medical and insurance fees, and the sum of money so accruing was put into a fund from which a physician was paid a salary to render medical attention to appellant's employés, and they were not required to pay the fees themselves for such attention, and also from this fund 60 per cent. of an injured employé's wages would be paid him while disabled by reason of personal injuries.

We consider that the above statement is a fair and full statement of the material facts, as shown by the undisputed evidence in detail, and upon these facts it is the contention of appellant that the relation of employer and employé did not exist between appellant and appellee, but that appellee was an independent contractor. We cannot agree with appellant in this contention, but, on the contrary have concluded that appellee, at the time of his injury, was an employé or servant of appellant, in the legal acceptation of that term, and the contention that appellee was an independent contractor is overruled. Cunningham v. Railroad Co., 51 Tex. 510, 32 Am. Rep. 632; Kampmann v. Rothwell, 107 S. W. 122; Railway Co. v. Warner, 88 Tex. 648, 32 S. W. 868; Cyc. vol. 26, p. 1546.

[2] As to the second proposition it is sufficient to say, that under the Workmen's Compensation Act of this state, passed by the Thirty-Fifth Legislature (Acts 1917, c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91]), the defense of assumed risk was not available to appellant in this case. Among other things, that act provides:

"In an action to recover damages for personal injuries sustained by an employé in the course of his employment, or for death result-ing from personal injury so sustained, it shall not be a defense: * * *

"3. That the employé had assumed the risk of the injuries incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employé to bring about the injury."

There is, of course, no contention here that appellee willfully injured himself. Therefore the second proposition is overruled.

[3] As to the third contention, that the evidence failed to show any negligence attributable to appellant which caused the injury, we conclude, after careful examination of the evidence, that the contention cannot be sustained, but, on the contrary, have concluded that the question as to whether appellant's foreman was negligent in persisting and insisting that appellee should proceed to saw this tree after it had fallen and after appellant's foreman had discovered the position of the fallen tree and his attention had been directly called, if he did not already see, to the very danger that resulted in appellee's injury. It is true, as claimed by appellant, that this tree was one which came within the class or dimensions that appellee was required to cut, under the terms of his employment, but it does not follow from that that a jury would not be warranted in finding that appellant's foreman, after seeing the position the tree was in after it had lodged between the saplings, did that which an ordinarily prudent person would not have done under the same or similar circumstances when he directed and ordered and insisted that appellee and his companion should proceed to saw the tree in the face of apparent danger to them. These conclusions make it necessary to overrule the first assignment of error.

The second, third, and fourth assignments of error embrace substantially the same complaint, which is, in substance, that the findings or answers made by the jury in response to the issues submitted relative to a material issue—namely, that of appellant's negligence —were so contradictory that no legal judgment could be rendered upon the verdict.

[4, 5] The trial court, after properly defining negligence and proximate cause, submitted for the jury's consideration the following special issues, to wit:

"Question No. 1. Was the plaintiff, W. H. Keen, doing the work which he was performing when hurt, under the orders and direction of Bill Kibler?" To this the jury answered "Yes."

"Question No. 2. Was Bill Kibler, as foreman of the defendant company, controlling and directing the work which the plaintiff, W. H. Keen, was performing when he was hurt?" To this the jury answered "Yes."

"Question No. 3. If you answer the foregoing questions Nos. 1 and 2 'Yes,' then answer this question: Was the said Bill Kibler guilty of negligence in ordering and directing the

plaintiff, W. H. Keen, to do the work he was performing when hurt, in the manner and method which he did direct and order plaintiff to perform such work?" To this question the jury answered "Yes."

"Question No. 4.. If you have answered 'Yes' to foregoing question No. 3, then answer this question: Was such negligence, if any, on the part of said Bill Kibler, the proximate cause of the injury received by plaintiff, if any?" To this question the jury answered "Yes."

The jury further answered, in response to proper question, that $5,000 would compensate the plaintiff for his injuries.

It is clear that the appellee was entitled to have judgment rendered upon this verdict, so far as we have stated it; but upon the trial appellant requested the trial court to give to the jury a special charge, not a special issue, reading as follows:

"Special Charge No. 10: The defendant, West Lumber Company, requests the court to charge the jury as follows: Gentlemen of the Jury: No one is guilty of negligence who uses that degree of care which a reasonably prudent and careful person would use under the same or similar circumstances, so, unless you believe and find, from a preponderance of the evidence, that Kibler failed to use such degree of care when he ordered plaintiff and Williams to cut said tree into logs, as charged, if he did so, then you will answer this question No. 10, 'No.' "

It is clear that no question was propounded to the jury by this special charge, nor was any special issue of fact thereby submitted, but on the contrary, the charge was the correct statement of an abstract proposition of law. The jury, however, for some reason, satisfactory to themselves, doubtless answered this special charge "No." Now, it is the contention, under this assignment, that the conclusion of the jury relative to this special charge constitutes a finding by the jury which is squarely in conflict with their answer to special issue No. 3, in answering which they found defendant guilty of negligence; in other words, it is the contention of appellant that, in answering special issue No. 3 submitted by the court, the jury found that appellant's foreman was guilty of negligence attributable to appellant in the manner claimed by appellee, but that in disposing of special charge No. 10 requested by appellant, the jury acquitted appellant of negligence as charged, and that therefore no legal judgment could have been properly rendered upon such contradictory verdict on such material issue.

Without again repeating the jury's findings down to and including question No. 4, it is perfectly clear that the jury intended to find and did find that appellant's foreman was guilty of negligence, as that term had been properly defined, and it is hardly reasonable to suppose that in the next breath the jury intended to find that appellant's foreman was not guilty of negligence, as

charged. It cannot be certainly determined why the jury made the answer they did to special charge No. 10 requested by appellant, but it is certain what the jury said was not in response to any question propounded by that charge, nor to any issue of fact submitted thereby. Whether the jury meant by the word "No," relative to that charge, that appellant's foreman used the degree of care on the occasion in question that a reasonably prudent and careful person would have used, or whether he did not use such care, we cannot, of course, determine, but it is certainly more reasonable to assume that the jury meant by what they said relative to that charge that appellant's foreman did not use such care as a reasonably prudent and careful person would have used under the same or similar circumstances, because they had already affirmatively, in answer to special issue No. 3, which was clear and pointed, found that appellant's foreman was guilty of negligence, as that term was properly defined by the trial court. It was the duty of the trial court to determine, if it reasonably could, what the jury meant by their findings in settling the issues submitted to them, and to reconcile, if he could, any apparent conflict between such findings, and the trial court evidently concluded that the jury, in saying "No" with reference to special charge No. 10, meant that appellant's foreman did not use such care on the occasion in question as a reasonably prudent and careful person would have used under the same or similar circumstances, because, as we have already said, it would be more reasonable for the trial court to so conclude than it would have been to conclude that the jury intended to find contrary to what they had already expressly found in answer to special issue No. 3. We think that, taking the jury's answers as a whole into consideration, and in connection with the court's instructions and questions, it cannot be reasonably contended that the jury's findings were so contradictory that the court was in error in entering judgment upon the verdict. The assignments are therefore overruled.

[6] The fifth assignment complains of the refusal of the trial court to give a special charge requested by appellant, which assumed that appellee was an independent contractor, and by the charge it was sought to have the jury instructed accordingly. We have already concluded, in disposing of the first assignment, that the evidence showed, practically without dispute, that appellee was not an independent contractor, as claimed by appellant, but, on the contrary, was an employé or servant. Therefore the fifth assignment should be overruled.

[7] The sixth assignment complains that the trial court refused to anywhere submit to the jury the issue as to whether, under

the contract between plaintiff and defendant, defendant's employé, Kibler, had authority to instruct plaintiff with reference to the manner in which he should perform his duties. We find in the record special issue No. 5 requested by appellant, and which was given by the court, as follows:

"Gentlemen of the Jury: At the request of defendant the following special issue is submitted to you, to wit: 'Did the defendant's employé, Kibler, have authority from the defendant to give the directions which plaintiff alleges in his petition herein he gave to plaintiff with reference to the manner in which plaintiff should perform his duties? You will answer this question "Yes" or "No." ' "

To this issue the jury answered "Yes." This, it would seem, disposes of the contention made by this assignment adversely to appellant, and the assignment is overruled.

[8-10] On the trial of the case appellant requested and the court refused issues framed as follows:

"Special Issue (a). Is the injury to plaintiff, as alleged in his petition, permanent? You will answer this question 'Yes' or 'No,' accordingly as you find the fact to be. Answer: ————."

"Special Issue (b). If the plaintiff had obeyed the directions, if any, of the physician and surgeon who treated him, would his injury have been permanent, or not? You will answer this question 'Yes' or 'No' accordingly as you find the fact to be? Answer: ————."

In the first place, we might say that there was no pleading on the part of appellant that appellee was guilty of any negligence in the treatment of his injuries or in failing to observe and obey the instructions of his attending physician and therefore, for that reason, appellant was not entitled to have the issues requested submitted. In the next place, as we understand the rule, a person injured by negligence of another is only required to use such care and prudence in treating and taking care of himself after injury as would have been used by an ordinarily careful and prudent person in treating such injuries under the same or similar circumstances, but such injured person is not bound, as a matter of law, to obey the instructions and advice of any particular physician by whom he may be treated, or to apply any specific treatment prescribed by such a physician. Where such an issue is raised by proper pleading and evidence in line therewith, the proper inquiry would be: Did the plaintiff exercise such care and prudence in taking care of himself and in having his injuries treated as would have been exercised by an ordinarily careful and prudent person under the same or similar circumstances? Rail-

way Co. v. McKenzie, 30 Tex. Civ. App. 293, 70 S. W. 238; Railway Co. v. O'Brien, 18 Tex. Civ. App. 690, 46 S. W. 391; Railway Co. v. Flood, 35 Tex. Civ. App. 197, 79 S. W. 1108; Southern Traction Co. v. Wilson, 187 S. W. 543; Railway Co. v. Graham, 168 S. W. 60. In this connection, however, we would show that special issue No. 5 submitted to the jury by the court was as follows:

"If the plaintiff was injured, and while he was under the treatment of Dr. Bergman, was he guilty of any act or omission which amounted to negligence that aggravated the injury he had received?"

To this question the jury answered "No." Thus it will be seen that the court did submit to the jury, without any pleading upon which to base it, the issue as to whether appellee was guilty of negligence in treating himself after the injury which aggravated the injury. Then again, in guiding the jury as to the amount that might be awarded appellee, the charge proceeded as follows:

"And in arriving at this amount of money or damages, if any you find, you will take into consideration the physical and mental suffering, if any, caused by such injury, and which is alleged in plaintiff's petition, and which the plaintiff has suffered, if you find he has suffered any, and will probably suffer in the future, if you so find, and also his lessened capacity, if any, to earn money; and, further, in arriving at such amount of money or damages, if any you find, you will, if you answer 'Yes' to the foregoing question No. 5, reduce the amount of damages which otherwise you would find, if any, having your answer to this question name the amount you then may find the plaintiff entitled to, if any, after making such deduction, if any."

The form of the court's charge, as just quoted, was not objected to in any way, and we think that, if the issue of appellee's negligence in treating himself after the injury had been raised by appellant's pleading, the charge of the court, as given, was sufficient to protect appellant in that connection; but if appellant desired a fuller instruction along that line, it should have asked a correct one. We think there is nothing in the assignment, and it is overruled.

The eighth assignment makes practically the same complaint as that made by the seventh, and it is overruled for the same reason. We might suggest, in this connection, however, that there is no complaint that the verdict is excessive.

We feel that no reversible error has been shown in this case, and that the judgment should be affirmed, and it will be so ordered.