**HOUSTON E. & W. T. R. CO. v. JONES.**
(No. 1502.)

Court of Civil Appeals of Texas. Beaumont. Dec. 20, 1927.

Rehearing Denied Jan. 11, 1928.

1. **Railroads ⬅282(5)—Evidence held to sustain jury's special finding that railroad's agent requested person injured to assist in reducing railroad's assessment.**

·Special finding of jury, in answer to special issue, that railroad's local agent requested county clerk to seek reduction of railroad's tax assessment, and to report to him, *held* sustained by evidence, in action for injuries sustained by clerk from stepping on nail in attempting to enter depot office to make report.

2. **Railroads ⬅17—Railroad's local agent, given authority to secure tax reduction, held authorized to procure assistance.**

Where railroad's local agent was given special authority to appear before commissioners' court for purpose of having railroad's tax assessment reduced, and was unable to secure any results by his own efforts, he was authorized under special agency to secure necessary

assistance, and his conduct in securing help of county clerk to act in his behalf was within scope of his authority.

3. **Railroads ⬅274(3)—If railroad knew of existence of plank with protruding nail, failure to remove plank was negligence as to invitee.**

If railroad, through its local agent, had actual knowledge, or, in exercise of ordinary care could have known, of existence of plank on its premises with protruding nail, rendering approach to depot dangerous, railroad was liable to person entering premises as invitee, where it failed to have plank removed.

4. **Railroads ⬅282(8)—Negligence in failing to procure removal of plank with protruding nail, injuring railroad's invitee, held for jury.**

Where railroad's local agent saw that planks had been left on railroad's premises with nails in them, rendering approach to depot dangerous, question whether railroad, through its agent, exercised ordinary care to have planks removed, *held* for jury, in action for injuries by invitee stepping on nail while approaching station.

5. **Trial ⬅350(6)—Special issue as to who placed plank between rails held properly refused as evidentiary, in action for injuries to invitee stepping on nail.**

In action for injuries to invitee stepping on nail in plank on entering railroad's premises, special issue requested as to whether plank was placed between rails by employees of railroad or employees of person removing freight from car *held* properly refused as purely evidentiary.

6. **Railroads ⬅274(2)—Railroad agent's request for county clerk's assistance in reducing assessment held not against public policy, preventing clerk from becoming invitee at station.**

Request of local agent of railroad that county clerk, who was ex officio clerk of commissioners' court, should assist him in procuring reduction of railroad's tax assessment by interviewing court and make report to him, *held* not against public policy so as to prevent clerk's occupying position of invitee as to railroad on sustaining injury on railroad's premises at time of going to station to give report.

7. **Trial ⬅350(1)—Court must submit affirmative allegations of complaint in case tried on special issues.**

Court is under duty to submit to the jury affirmative allegations of plaintiff's cause of action in suit tried on special issues.

8. **Railroads ⬅274(2)—That person approaching station to report on tax reduction also expected game did not prevent recovery as invitee.**

Where county clerk, injured in approaching railroad station, had come to interview railroad's local agent regarding clerk's efforts to secure reduction of tax assessment from commissioners' court, it was no defense to railroad that clerk also came for purpose of participating in a domino game, and that he would not have come otherwise, as such fact did not prevent his occupying position of invitee.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Trial** ⊜☞351(5)—**Refusal of special issue substantially embodied in charge is not error.**

Where substance of requested special issue is embodied in court's charge, refusal of issue is not error.

**10. Trial** ⊜☞350(6)—**Special issue as to when county clerk agreed to report to agent held properly refused as evidentiary, in action for injuries to clerk approaching station.**

In action against railroad for injuries sustained by county clerk entering premises to make report to local agent as to efforts in securing tax reduction on railroad's property, requested special issue as to when agreement was made between agent and county clerk relative to securing tax reduction *held* evidentiary, and properly refused.

**11. Railroads** ⊜☞274(2)—**That person, assisting in reducing railroad's taxes, was actuated by friendship, did not affect recovery, as invitee.**

In action for injuries to county clerk approaching railroad station to make report to local agent concerning attempts to secure reduction of tax assessment on railroad's property, right of clerk to recover against railroad as invitee was not affected by fact that he may have been actuated by motives of personal friendship to agent in promising assistance.

**12. Trial** ⊜☞352(4)—**Requested special issue, neither pleaded nor raised by evidence, is properly refused.**

Refusal of special issue covering matters not pleaded, and concerning which there was no evidence, is not error.

**13. Damages** ⊜☞62(2)—**Injured person is only required to exercise ordinary care in having injuries treated.**

Injured person is only required to exercise such care and prudence in caring for himself and having his injuries treated as ordinarily careful and prudent person would exercise under similar circumstances.

**14. Damages** ⊜☞43—**Charges for doctor, medical and hospital bills are not recoverable without proof of reasonableness.**

In action for injuries, no recovery could be had for doctor bills, medical bills, and hospital fees, as shown by evidence, where there was no showing made that charges for such services were reasonable.

**15. Appeal and error** ⊜☞1172(5)—**Improper allowance of medical expenses held not to require reversal of entire case.**

Where, in action for injuries, amount of verdict awarded for doctor, medical, and hospital bills was easily ascertainable both from pleadings and evidence, improper allowance of such items *held* not to require reversal of entire case, but merely as to amount of such items.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Action by Alex Jones against the Houston East & West Texas Railroad Company. Judgment for plaintiff, and defendant appeals.

Affirmed in part, and in part reversed and remanded, with provision for modification and affirmance on condition of remittitur.

Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, and Feagin & Feagin, of Livingston, for appellant.

E. B. Pickett, Jr., of Liberty, and Strode & Pitts, of Conroe, for appellee.

WALKER, J. On a trial before a jury on special issues, appellee recovered a judgment against appellant in the amount of $15,000 for personal injuries suffered by him through appellant's negligence. As no issue arises on the pleadings, it will be sufficient to give a brief statement of the facts.

On July 9, 10, and 11, 1923, and immediately prior and subsequent to that date, appellee was clerk of the county court of Polk county. On July 9, 1923, the commissioners' court of Polk county convened as a board of equalization, and appellant was one of its taxpayers who had been notified to appear and show cause why its taxes should not be increased. The notice was to show cause "why the valuation of its railroad through Polk county should not be increased from $355,980 to $418,880." Mr. P. H. Blalock, appellant's local agent at Livingston, the county seat of Polk county, appeared for appellant in answer to the summons, and under authority from his superiors, but was unsuccessful in his efforts to have the tentative valuation reduced. Appellee testified that Mr. Blalock came to him on the afternoon of the 11th, after he had made his appearance before the commissioners' court, and told him that the valuation of the railroad property had been increased from the previous year, and he thought beyond its reasonable value, as compared with other property in the county. Appellee agreed with Mr. Blalock that the amount was too high. Then Mr. Blalock asked him to speak to the commissioners' court about the matter, and try to have the amount reduced to the rendition of the previous year. Appellee agreed to do this. Mr. Blalock then asked appellee to call at the depot of appellant in the town of Livingston after supper and report the result of his efforts, so that the information could be wired that night to appellant's general offices. In making this request Mr. Blalock told appellee that some of their mutual friends would meet them at the depot, and they could have a social game of "42."

Mr. Blalock denied every word of this conversation. He said his appearance before the commissioner's court was on the 10th, and not on the 11th. He said he did not speak to appellee about the tax matter, made no request of him in connection with the tax matter, and did not see appellee on the 11th until he came to his office at the depot on the night of that day, when he and ap-

pellee and other mutual friends engaged in a game of "42." Appellant offered in evidence the minutes of the commissioners' court sitting as a board of equalization, and construes the closing order as showing that the court adjourned on the 10th. However, the minutes contain an affirmative order showing that the court was in session on the 11th, and one of the commissioners testified to that effect, and corroborated his testimony by circumstances strongly supporting him.

Appellee in fact, went to appellant's depot the night of the 11th, and, in attempting to enter the office at the depot over the usual way, and through the entrance made for that purpose, stepped on a nail, suffering therefrom the serious injuries upon which this suit was based. Appellant denied all knowledge that the plank with the nail in it was on its premises, or that in the exercise of ordinary care it could have known of its presence there. On this issue the evidence was as follows:

On the afternoon of the 11th, the contractor engaged in building the courthouse at Livingston had unloaded from a car on appellant's railroad a concrete mixer. The evidence is uncertain as to what hour of the afternoon this was done. However, there is sufficient evidence to raise the issue that the unloading began not later than 2 p. m. The machine was heavily crated, and the servants of the contractor, in unloading it, knocked off the crating, and left it on or near the track where the car containing the concrete mixer was standing, thereby leaving it on appellant's premises, over which it was customary for the public to pass in going to the depot office. The testimony showed that Mr. Blalock, the agent, about 5 o'clock that afternoon, returned to his office, saw the condition of the premises with the crating scattered on the ground, and requested the contractor's servants to clean up the yard and remove the rubbish they had left there. Appellant's regular servant for this purpose had finished his day's work at that time. Mr. Blalock did not return to see whether the contractor's servants had obeyed his orders. In fact, an effort was made to clean up the rubbish, but the particular plank in question was overlooked.

Appellee testified that he made some slight effort to see the members of the commissioners' court on the afternoon of the 11th, but was not able to do so; that he walked around the streets of the town, and, not seeing them, made no further effort to locate them. He said he made due report to Mr. Blalock on the night of the 11th, after he went to the depot, of his efforts to see the commissioners. Mr. Blalock denied that appellee said anything to him about the tax matter on the night of the 11th, and the other members of the "42" party testified that they heard nothing said by appellee to Mr. Blalock on that matter. Appellant concedes

that Mr. Blalock was duly authorized to appear for it before the commissioner's court on the tax matter, and the record showed that he had performed this service for many years prior to 1923, and at one time had appeared for appellant in an adjoining county.

Appellee suffered a most serious injury as a result of stepping on the nail.

The issues arising under the foregoing statement were submitted to the jury by the following questions, answered as indicated:

"Question No. 1: Was the plaintiff, Alex Jones, requested by P. H. Blalock, the agent of the defendant railway company, to come to its depot the night he was injured, if he was injured, to report to the said Blalock whether or not he had seen any member or members of the commissioners' court with reference to reducing or raising the valuation of the said railway company's property in Polk county? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 2: If you answered 'Yes' to the preceding question No. 1, then answer this question: Was the said P. H. Blalock authorized by the defendant to act for and represent the defendant company when he, the said Blalock, so requested the plaintiff, Alex Jones, to come to the depot and make such report to him? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 3: Did the plaintiff, Alex Jones, go to said depot of defendant the night he was injured, if he was injured, to report to the said agent, Blalock, whether he had seen any members of the commissioners' court relative to the reducing or raising of the valuation of defendant's property in Polk county? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 4: Did the defendant railway company permit boards or planks with nails sticking upward through them to remain upon its premises at or near the entrance of its depot at Livingston, as alleged in plaintiff's fourth amended original petition? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 5: If you answer the preceding question No. 4 'Yes,' then answer this question: Did the defendant railway company know, or could it by the use of ordinary care have known, the boards or planks with nails sticking upward through them were on its premises near the entrance of its depot office, so that persons having business with said railway company, and about to enter its said office, might be injured thereby? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 6: If you answer question No. 5 'Yes,' then answer this question: Was the defendant railway company guilty of negligence in permitting planks or boards with nails therein with the points standing upward to remain on its depot premises, as alleged in plaintiff's fourth amended original petition? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 7: If you answer the preceding question No. 6 'Yes,' then answer this question: Was the negligence of said railway company the proximate cause of the injury re-

ceived of the plaintiff Alex Jones? Answer 'Yes' or 'No.'"

The jury answered this question: "Yes."

"Question No. 8: What amount of money, if any, if paid now, would fairly and justly compensate the plaintiff, Alex Jones, for the injury, if any you may find, he sustained, and which was proximately caused by the negligence, if any you find, on the part of the defendant railway company? Answer by stating the amount."

To this question the jury answered: "$15,-000."

"Special Issue No. 3a: Did the plaintiff, Alex Jones, have any agreement or understanding or promise upon his part with P. H. Blalock that he (Alex Jones) would use his influence with the various commissioners composing the board of equalization of Polk county, Tex., to have the tax assessment of the Houston East & West Texas Railway Company reduced in Polk county, Tex., for the year 1923? You will answer this question 'Yes' or 'No.'"

To this question the jury answered: "Yes."

Appellant attacks the submission of this case, and challenges the answers of the jury as being without support. The proposition is also advanced that it should have had an instructed verdict.

[1, 2] It requires no argument to support the jury's finding that appellee was requested by Mr. Blalock to talk to the commissioners' court on the tax matter and to report to him on the night of the 11th the result of his efforts to see the commissioners' court. The jury's answer to Issue No. 2 is attacked by appellant by the proposition that Blalock's agency in this particular matter was special, and in law he had no authority from his master to act for it in securing the assistance of appellee, and to invite appellee to the depot to make the report. On this issue there was no conflict in the evidence. It was shown that Mr. Blalock for years had represented appellant in its tax matters before the commissioners' court of Polk county, and was specially requested to appear on this particular occasion, and at one time he represented appellant on the same question in an adjoining county. Appellee's testimony raised the issue that Mr. Blalock asked him to see the commissioners' court in the interest of appellant, and to report to him at the depot that night the result of his efforts, and in discharging his promise to Mr. Blalock he went to the depot that night to make a report, and, in fact, did make a report. The statement as made reflects all his testimony on the issue submitted by Question No. 2. We think the jury's answer to that question has support in law. Blalock was empowered by appellant to appear before the court for the purpose of having its tax assessment reduced. He was unsuccessful in his efforts to have the tax assessment reduced. Thus he was unable, by his personal efforts, to discharge the purposes of this special agency. To effectuate this purpose, he was authorized in law, not only to

appear personally before the court, but also to secure the necessary assistance, that is, to ask appellee's assistance. In Schaff v. Stripling (Tex. Civ. App.) 265 S. W. 266, the following proposition from 21 R. C. L. 853, was quoted as follows:

"While it is true as appellant insists it is that 'a special agent is only authorized to do specific acts in pursuance of particular instructions, or with restrictions necessarily implied from the act to be done,' it is also true that such an agent, like a general agent by implication, has 'all such powers as are necessary and proper as a means of effectuating the purposes for which the agency was created.'"

This proposition is supported, without dissent, by the following Texas authorities: McAlpin v. Cassidy, 17 Tex. 463; San Angelo Water Co. v. Baugh (Tex. Civ. App.) 270 S. W. 1104; Merriman v. Fulton, 29 Tex. 97; Railway v. Hume, 87 Tex. 211, 27 S. W. 110; Hull v. Railway Co., 66 Tex. 619, 2 S. W. 831; McAlpin v. Ziller, 17 Tex. 508; Gray v. Lumpkin (Tex. Civ. App.) 159 S. W. 880; 2 C. J. 570, 571, § 211, cases cited, notes 31 and 32.

[3, 4] In answering questions 4, 5, and 6, the jury found facts convicting appellant of negligence in permitting the board with the nail in it to remain upon its premises. These findings are supported. Mr. Blalock saw that the contractor's servants had left upon his yard planks with nails in them. Attempting to discharge his duty to the public, he requested the contractor's servants to remove these planks. Knowing that the plank was there, it was his duty to exercise ordinary care to have it removed. It was for the jury to say whether that duty had been discharged. The rule is thus stated by Judge Greenwood, speaking for the Supreme Court in Railway Co. v. Reinle, 113 Tex. 462, 258 S. W. 804:

"'Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knew or ought to know of, and of which they are not aware.' Samuelson v. Cleveland Iron Mining Co., 49 Mich. 170, 13 N. W. 501, 43 Am. Rep. 456."

See, also, Bustillos v. Southwestern Portland Cement Co. (Tex. Com. App.) 211 S. W. 931; Moreman Gin Co. v. Brown (Tex. Civ. App.) 291 S. W. 947; El Paso Printing Co. v. Glick (Tex. Civ. App.) 246 S. W. 1077; Weatherford Machine & Foundry Co. v. Pope (Tex. Civ. App.) 132 S. W. 504. These authorities are a direct answer to the following proposition advanced by appellant on this issue:

"If it be contended that the plaintiff went to the depot on the night of July 11th as an invitee, and, in so going, he was acting for the company, the defendant would not be liable to the plaintiff, by reason of having extended him an invitation, for any injuries that the plain-

tiff received by stepping upon a nail lying between the rails of the house track, when there were other safe places and safe ways for plaintiff to enter the depot, unless it clearly appears that the plank with the nail in it was left there by the employees of the defendant company. In other words, an owner of premises would not be liable to one invited upon the premises for any injuries, by reason of dangerous obstructions on the premises, unless such fact was known to the owner and unknown to the invitee. This principle is fully laid down under appellant's authorities cited under the second, third, and fourth propositions."

In support of its proposition, appellant cites 20 R. C. L. p. 56. We do not understand that authority as announcing the proposition that appellant would be liable only upon *actual knowledge*. The rule is that the defendant is liable if it had actual knowledge, or, in the exercise of ordinary care, could have known, of the existence of the plank.

Appellant attacks the jury's verdict on the ground that appellee in entering upon its premises did not do so over the usual and customary way prepared by it for that purpose. That contention cannot be sustained. Judge Murphy, the county judge of Polk county, testified that he was with appellee the night he was injured, and that appellee "at that time was in the usual and customary place where people traveled in entering the depot office; that is the usual and customary way of entering that depot; that is the way it was at that time."

[5] On the issue of negligence, appellant requested the following charges:

"No. 8. Was the plank with the nail in it which stuck in plaintiff's (Jones') foot placed between the rails by the agents, servants, and employees of the defendant company?

"No. 9. Was the plank with the nail in it left on the track between the rails by the employees of Isaac Young after the concrete mixer had been unloaded from the car?

"No. 10. Did the defendant company, or its agents, servants and employees at the depot, after the concrete mixer had been unloaded, know that the plank with a nail in it had been left between the rails of the defendant company's track by the employees of Isaac Young?"

Isaac Young was the contractor above referred to, and the owner of the concrete mixer. Questions 8 and 9 are on purely evidentiary issues. Question No. 10, had it been submitted and answered in appellant's favor, would not have entitled appellant to a verdict. As just stated, appellant was liable, not only on the theory of actual knowledge submitted by issue No. 10, but also for failing to exercise ordinary care to acquire actual knowledge.

[6] Conceding that the jury's verdict has support in the evidence, yet appellant says the court erred in refusing to instruct a verdict in its favor, and prays that we reverse and render that judgment here. That is on the theory that appellee was a licensee and not an invitee. Appellant says that the re-

quest by Blalock of appellee to see the commissioners and report to him was in violation of public policy, and, if made, as testified to by appellee, could not in law authorize his presence upon appellant's premises. This proposition is not sound. Appellee was the county clerk of Polk county, and was ex officio clerk of the commissioners' court. As such,·and as a citizen of Polk county, it was his privilege, either voluntarily, or upon request of any taxpayer in the county, to advise with the commissioners' court on the value of property being considered by it as a board of equalization. If he thought the property was assessed too high, in good faith, and not in violation of any duty he owed the county, he could tell them so. If he thought it was too low, he could tell them so. There was no suggestion of an improper motive between Mr. Blalock and appellee. There is nothing in the record to suggest that appellee, in agreeing to appear before the commissioners' court in the interest of appellant, or to see the members personally, was actuated by any motive other than to assist the commissioners' court in reaching a fair and impartial decision on the value of appellant's property. Appellant certainly wanted to know what disposition was being made of its protest, and, being invited by Blalock to make a report of his efforts, appellee going to the depot to make such a report was not in bad faith, nor in violation of any public policy.

On its theory that appellee was a licensee and not an invitee, appellant requested the following charges:

"No. 2. What was the object and purpose of the plaintiff, Alex Jones, in going to the depot of the defendant on July 11, 1923, in company with Ray Brock and B. B. Barrington?"

"No. 7. Would the plaintiff, Alex Jones, have gone to the depot of the defendant company on the night of July 11, 1923, had he not intended and expected and anticipated to engage in a game of dominoes or 42 with B. B. Barrington and Ray Brock and others?"

"No. 3. Did the plaintiff, Alex Jones, have any agreement or understanding or promise upon his part with P. H. Blalock that he (Alex Jones) would use his influence with the various commissioners composing the board of equalization of Polk county, Tex., to have the tax assessment of the Houston East & West Texas Railway Company reduced in Polk county, Tex., for the year 1923?"

"No. 5. If you have answered there was such an agreement or promise or understanding upon the part of the plaintiff, Alex Jones, with P. H. Blalock, then you will answer the following question: Was such agreement, promise, or understanding upon the part of Alex Jones made in behalf of and in the interest as a representative of the defendant, Houston East & West Texas Railway Company, or was it made simply as a personal friend of P. H. Blalock?"

[7, 8] The court did not err in refusing to submit these charges. In answering question No. 1, the jury found that appellee was

requested by Blalock, the agent of appellant, to go to its depot, and in answer to question No. 3 found that appellee went to the depot to make report to Blalock.

These issues submitted the case made by appellee's pleadings. Clearly, it was the duty of the court to submit to the jury the affirmative allegations of appellee's cause of action. These charges were in due form, and not upon the weight of the evidence. Issue No. 2, requested by appellant, was only a resubmission of issues 1 and 3 of the court's charge. There was no contested issue that appellee in going to appellant's depot intended to engage in a game of "42." He said that he went to the depot for two purposes, one to report to Mr. Blalock and the other to play dominoes. It was immaterial whether but for the game of dominoes he would have 'phoned his information to Mr. Blalock, or but for the keeping of his promise to make the report he would not have gone to play dominoes. Both motives influenced him, according to his testimony, in going to the depot. Both purposes were the proximate cause of his presence on appellant's premises at the time he was injured. Being concurring causes, the fact that the domino game influenced him, and that he would not have gone but for the domino game, would not have constituted a defense. This principle has been recently discussed by us in Rosenthal Dry Goods Co. v. Hillebrandt, 299 S. W. 665.

[9-11] The substance of special issue No 3 was embodied in the court's charge. Appellant's requested issue as to when the agreement or promise was made was evidentiary and improper. An answer in appellant's favor to special issue No. 5 would not have constituted a defense. Appellee may have been actuated by motives of personal friendship to P. H. Blalock in making the promise, but such a motive would not have made him a licensee in the discharge of the promise. No issue arose that the promise was for the ultimate benefit of appellant.

[12, 13] In connection with special issue No. 8, appellant requested the following charge:

"In connection with an explanatory of special issue No. ――――, submitted to you by the court, you are instructed that, if you find for the plaintiff, and in assessing his damages you are instructed that, you will only take into consideration such elements of damages as were the direct and proximate result that plaintiff sustained by reason of sticking a nail in his foot— and in this connection, if you should find and believe from the evidence that plaintiff has suffered other damages growing out of the sticking of a nail in his foot, which could not reasonably have been foreseen or anticipated by the defendant company, and that such aggravated damages was caused or produced by other cause or causes other than the sticking of the nail in the foot, then you are instructed that you can take into consideration such damages,

if any, that plaintiff has sustained. The plaintiff can only recover such damages as would reasonably be foreseen or anticipated by the defendant company in sticking a nail in his foot, and, if his foot became infected from any other cause or causes subsequent to the sticking of the nail in his foot, then the defendant railway company would not be responsible for such damages produced by such cause or causes."

The refusal of this charge was not error. In the first place, there was no evidence raising the issues covered by this charge, and, in the second place, the issue was not pleaded. What this court said in West Lumber Co. v. Keen, 221 S. W. 629, is decisive against appellant's contention:

"In the first place, we might say that there was no pleading on the part of appellant that appellee was guilty of any negligence in the treatment of his injuries or in failing to observe and obey the instructions of his attending physician, and therefore, for that reason, appellant was not entitled to have the issues requested submitted. In the next place, as we understand the rule, a person injured by negligence of another is only required to use such care and prudence in treating and taking care of himself after injury as would have been used by an ordinarily careful and prudent person in treating such injuries under the same or similar circumstances, but such injured person is not bound, as a matter of law, to obey the instructions and advice of any particular physician by whom he may be treated, or to apply any specific treatment prescribed by such a physician. Where such an issue is raised by proper pleading and evidence in line therewith, the proper inquiry would be: Did the plaintiff exercise such care and prudence in taking care of himself and in having his injuries treated as would have been exercised by an ordinarily careful and prudent person under the same or similar circumstances?"

[14] Appellee pleaded and attempted to support by his evidence the following elements of special damages:

| | |
|---|---:|
| Bergman Hospital | $ 504 00 |
| Dr. H. Bergman, prof. services after leaving hospital | 15 00 |
| Dr. W. K. McCardell, treatment before going to hospital | 23 00 |
| Cochran Drug Company, for crutches, bandages, and medicine | 16 70 |
| Livingston Drug Company, for bandages, medicine, etc. | 116 20 |
| And on account of the injuries aforesaid plaintiff was caused to expend the following sums of money, to wit: | |
| Miss Victoria Evans, for work in office during sickness | 150 00 |
| Miss Bertha Victory, for work in office during sickness | 120 00 |
| J. H. McKee, about his regular salary | 50 00 |
| Jitney hire coming to and from the office before I was able to walk, payment of other work done in the office, and payment for medicine for which I have no record, at least | 25 00 |
| All of which totals the sum of | $1,019 00 |

[15] But there was no evidence that the cost of these items was reasonable. The evidence went no further than to show that ap-

pellee paid out these specific amounts. For that reason, the court should have eliminated all these special items from its charge to the jury. The plaintiff could recover items such as doctor bills, medicine bills, hospital fees, etc., only upon a showing that the charges were reasonable. City of Beaumont v. Dougherty (Tex. Civ. App.) 298 S. W. 631. However, this error does not reverse the case, since the amount involved is easily ascertained, both from the pleadings and the evidence. The jury having assessed appellee's damages at $15,000, and he having pleaded his special damages in the sum of $1,019, it follows that the judgment should be affirmed for $13,981, being the difference between $15,000 and $1,019. As to the $1,019, being the items above referred to, the cause is reversed and remanded.

Affirmed in part, and in part reversed and remanded, with costs taxed against appellee.

Should appellee not desire to prosecute his claim further for the items mentioned, the judgment will be reformed and affirmed in the sum of $13,981, upon the filing by him of a remittitur covering the amounts involved in our order of reversal.